Sanitary and Improvement District No. 1, Butler County, Nebraska, on behalf of itself and all others similarly situated, appellant and cross-appellee, v. Karey Adamy, county treasurer of Butler County, Nebraska, et al., appellees and cross-appellants.

Sanitary and Improvement District No. 1, Butler County, Nebraska, on behalf of itself and all others similarly situated, appellant and cross-appellee, v. Beverly Davis, county treasurer of Adams County, Nebraska, et al., appellees and cross-appellants.

___ N.W.2d ___

Filed January 16, 2015.    Nos. S-13-1091, S-13-1092.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.
4. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.
5. **Constitutional Law: Immunity: Waiver.** Under the 11th Amendment, a non-consenting state is generally immune from suit unless the state has waived its immunity.
6. **Political Subdivisions: Counties: Legislature.** A county is a political subdivision of the state and has subordinate powers of sovereignty conferred by the Legislature. As such, it acts purely as an agent of the state and is entitled to immunity from suit.
7. **Constitutional Law: Immunity: Waiver.** Neb. Const. art. V, § 22, provides that the state may sue and be sued and that the Legislature shall provide by law in what manner and in what courts suits shall be brought. This allows the state to lay aside its sovereignty if the Legislature should so choose.
8. **Statutes: Immunity.** Statutes authorizing suits against the state are to be strictly construed because such statutes are in derogation of the state's sovereign immunity.

9. **Immunity: Waiver.** Waiver of sovereign immunity will be found only where stated by the most express language or by such overwhelming implications from the text as will leave no room for any other reasonable construction.

10. **Public Officers and Employees: Immunity.** Sovereign immunity has potential applicability to suits brought against state officials in their official capacities only. It does not apply when state officials are sued in their individual capacities—that is, when a suit seeks to hold state officials personally liable.

11. **Complaints: Public Officers and Employees.** In order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the complaint; otherwise, it will be assumed that the defendant is being sued only in his or her official capacity.

12. **Actions: Public Officers and Employees: Immunity: Appeal and Error.** In reviewing actions against state officials, a court must determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity.

13. **Actions: Parties.** In an action for the recovery of money, the state is the real party in interest.

14. **Actions: Parties: Public Officers and Employees.** Official-capacity actions for prospective relief are not treated as actions against the state.

15. **Sanitary and Improvement Districts: Legislature: Political Subdivisions.** A sanitary and improvement district is a legislative creature, a political subdivision of the State of Nebraska.

Appeals from the District Court for Cass County: Jeffrey J. Funke, Judge, and Randall L. Rehmeier, District Judge, Retired. Reversed and remanded with directions.

Raymond E. Baker, of Law Offices of Raymond E. Baker, P.C., Jacqueline M. De Wispelare, of Law Office of Jacqueline M. De Wispelare, L.L.C., and Michael W. Heavey, of Colombo & Heavey, P.C., for appellant.

Charles W. Campbell, of Angle, Murphy & Campbell, P.C., L.L.O., for appellees Karey Adamy et al.

Donald W. Kleine, Douglas County Attorney, and Malina Dobson for appellees John Ewing et al.

Edmond E. Talbot III, Deputy Washington County Attorney, for appellees Marjorie Hoier and Washington County.

Joe Kelly, Lancaster County Attorney, and Brittany L. Behrens for appellees Andy Stebbing and Lancaster County.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Heavican, C.J.

## INTRODUCTION

Sanitary and Improvement District No. 1, Butler County,
Nebraska (SID #1), filed two class action lawsuits, both in
Cass County, Nebraska. Both suits alleged that defendant
county treasurers unlawfully deducted an incorrect percent-
age of assessments collected on behalf of SID #1 as well as
other similarly situated sanitary and improvement districts.
Defendant county treasurers in each suit filed motions to dis-
miss for failure to state a claim. Those motions were granted,
and the complaints were dismissed. SID #1 appeals. We con-
solidated these appeals for oral argument and disposition. We
reverse, and remand with directions.

## FACTUAL BACKGROUND

These appeals involve two class action lawsuits, both filed
in Cass County. Each will be discussed in turn.

*Appeal in Case No. S-13-1091.*

SID #1 filed its first class action complaint on December
21, 2012, against various county treasurers. In that complaint,
SID #1 alleged that the county treasurers collected assessments
of municipal improvements on behalf of SID #1 and

collected, for their services rendered, a sum of money
equal to two percent (2%) of the funds they received on
such special assessments, rather than a sum equal to one
and one half percent (1 ½ %) of the special assessments
collected, as is provided by Neb. Rev. Stat. §33-114[(4)
(Reissue 2008)].

In its complaint, SID #1 sought damages, attorney fees,
and costs. SID #1 also sought class action status, alleging
that other sanitary and improvement districts had also been
subjected to similar unlawful deductions and that the number
of the proposed class was so numerous as to make it imprac-
ticable to bring each class member before the court. SID #1
further alleged that the assessments at issue were made for the

purposes listed in Neb. Rev. Stat. § 31-744 (Reissue 2008) and that such constituted "municipal improvements."

*Appeal in Case No. S-13-1092.*

SID #1 filed its second class action complaint on March 28, 2013. This complaint alleged that defendant county treasurers collected municipal taxes on behalf of SID #1 and "collected, for their services rendered, a sum of money equal to two percent (2%) of the funds they received on such taxes, rather than a sum equal to one percent (1%) of the taxes, as is provided by Neb. Rev. Stat. §33-114(3)." This complaint sought the same relief as the appeal in case No. S-13-1091, including class action status.

The various defendant county treasurers filed motions to dismiss. Those motions were granted, with the district court similarly concluding in two separate orders that (1) the counties had waived sovereign immunity and (2) SID #1 was not a municipal corporation and thus could not make assessments for municipal improvements or municipal taxes. As such, the district court concluded that SID #1 failed to state a claim upon which relief could be granted. SID #1 appeals. Defendant county treasurers cross-appeal.

## ASSIGNMENTS OF ERROR

In case No. S-13-1091, SID #1 assigns, restated and consolidated, that the district court erred in finding that (1) the sanitary and improvement districts are not municipal corporations and therefore do not create municipal improvements and (2) the statutes creating sanitary and improvement districts do not provide for the authority to enact legislation.

Defendant county treasurers cross-appeal and assign that the district court erred in (1) rejecting their claim of sovereign immunity and (2) failing to dismiss for lack of subject matter jurisdiction and personal jurisdiction.

In case No. S-13-1092, SID #1 assigns, again restated and consolidated, that the district court erred in finding that (1) the sanitary and improvement districts are not municipal corporations and that therefore their assessments do not

constitute municipal taxes and (2) the statutes creating sanitary and improvement districts do not provide for the authority to enact legislation.

On cross-appeal, defendant county treasurers assign that the district court erred in (1) rejecting their claim of sovereign immunity and (2) failing to dismiss for lack of subject matter jurisdiction and personal jurisdiction.

## STANDARD OF REVIEW

[1-3] A district court's grant of a motion to dismiss is reviewed de novo.[1] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[2] To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.[3]

[4] To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.[4]

## ANALYSIS

*Immunity.*

We turn first to the county treasurers' cross-appeal. In that cross-appeal, the county treasurers allege the district court

---

[1] *Bruno v. Metropolitan Utilities Dist.*, 287 Neb. 551, 844 N.W.2d 50 (2014).

[2] *Id.*

[3] *Id.*

[4] *Id.*

erred in finding that under *Hoiengs v. County of Adams*,[5] "the respective counties' sovereign immunity ha[d] been waived."

We recently clarified the principles of sovereign immunity in suits against the state and in official-capacity suits against state agents in *Anthony K. v. State*[6] and *Anthony K. v. Nebraska Dept. of Health & Human Servs*.[7] "The immunity of states from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution and which they retain today."[8]

[5,6] Thus, under the 11th Amendment, a nonconsenting state is generally immune from suit unless the state has waived its immunity.[9] A county is a political subdivision of the state and has subordinate powers of sovereignty conferred by the Legislature.[10] As such, it acts purely as an agent of the state[11] and is entitled to immunity from suit.[12]

[7] But Neb. Const. art. V, § 22, provides: "The state may sue and be sued, and the Legislature shall provide by law in what manner and in what courts suits shall be brought." This allows the state to lay aside its sovereignty if the Legislature should so choose.[13]

The district court relied upon *Hoiengs*, wherein this court noted that the state's immunity was waived by Neb. Rev. Stat. § 25-21,206 (Reissue 1989),[14] which allowed the state to be sued in any matter "'founded upon or growing out of a contract, express or implied, originally authorized or

[5] *Hoiengs v. County of Adams*, 245 Neb. 877, 516 N.W.2d 223 (1994).

[6] *Anthony K. v. State, ante* p. 523, 855 N.W.2d 802 (2014).

[7] *Anthony K. v. Nebraska Dept. of Health & Human Servs., ante* p. 540, 855 N.W.2d at 788 (2014).

[8] *Anthony K. v. State, supra* note 6, *ante* at 536, 855 N.W.2d at 812.

[9] *Doe v. Board of Regents*, 280 Neb. 492, 788 N.W.2d 264 (2010).

[10] *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002).

[11] *Id.*

[12] *Anthony K. v. Nebraska Dept. of Health & Human Servs., supra* note 7.

[13] See *Hoiengs v. County of Adams, supra* note 5.

[14] See § 25-21,206 (Reissue 2008).

subsequently ratified by the Legislature, or founded upon any law of the state.'"[15]

[8,9] Statutes authorizing suits against the state are to be strictly construed because such statutes are in derogation of the state's sovereign immunity.[16] Waiver of sovereign immunity will be found only where stated "'"by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."'"[17]

In part, SID #1 seeks declaratory relief, but we have held that the declaratory judgment statutes are insufficient to waive the state's immunity.[18] As such, another source of waiver, if any, must be found.

SID #1 argues that contract theory presented in *Hoiengs* is applicable here. We disagree. The contract in *Hoiengs* was based upon the employment relationship, which is plainly a contractual one. The provisions of Neb. Rev. Stat. § 33-114 (Reissue 2008) at issue here simply allow county treasurers a fee in exchange for collecting certain assessments and taxes. We find no merit to SID #1's contention. To find a contract here would potentially result in the finding of a contract, and a waiver of immunity, with every statutory duty created. Such would clearly not be in keeping with the proposition that statutes authorizing waiver be strictly construed and found only when expressly stated.

Beyond this contract theory, SID #1 directs us to no other provision of law which would show any waiver, let alone the express language of waiver required under Nebraska law. We conclude there has been no waiver of the counties' sovereign immunity in these cases.

[10] In addition to filing suit against the individual counties, SID #1 filed suit against the county treasurers of those

---

[15] *Hoeings v. County of Adams, supra* note 5, 245 Neb. at 890, 516 N.W.2d at 235.

[16] *Hoeings v. County of Adams, supra* note 5.

[17] *Wiseman v. Keller*, 218 Neb. 717, 720, 358 N.W.2d 768, 770 (1984).

[18] *Concerned Citizens v. Department of Environ. Contr.*, 244 Neb. 152, 505 N.W.2d 654 (1993).

counties. As we recently noted in *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, "sovereign immunity has potential applicability to suits brought against state officials in their official capacities only. It does not apply when state officials are sued in their individual capacities—that is, when a suit seeks to hold state officials personally liable."[19]

[11] SID #1 did not explicitly state whether those suits were filed against the county treasurers in their official capacities or individual capacities. This court has held that in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the complaint; otherwise, it will be assumed that the defendant is being sued only in his or her official capacity.[20] We therefore conclude that the county treasurers have been sued in their official capacities.

[12] "'Official-capacity suits . . . "generally represent only another way of pleading an action against an entity of which an officer is an agent."'"[21] As such, in reviewing actions against state officials, we must "'determine whether an action against individual officials sued in their official capacities is in reality an action against the state and therefore barred by sovereign immunity.'"[22]

[13] In an action for the recovery of money, the state is the real party in interest, because "'"a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents."'"[23] As such, if not waived, sovereign immunity bars claims for money damages even where

---

[19] *Anthony K. v. Nebraska Dept. of Health & Human Servs., supra* note 7, *ante* at 546-47, 855 N.W.2d at 795.

[20] *Holmstedt v. York Cty. Jail Supervisor*, 275 Neb. 161, 745 N.W.2d 317 (2008). See *Johnson v. Outboard Marine Corp.*, 172 F.3d 531 (8th Cir. 1999).

[21] *Anthony K. v. Nebraska Dept. of Health & Human Servs., supra* note 7, *ante* at 547, 855 N.W.2d at 795.

[22] *Id.*

[23] *Id.*

the plaintiff has named, as nominal defendants, individual state officials.[24]

[14] Official-capacity actions for prospective relief are treated differently, and are not treated as actions against the state.[25] "Where a court 'commands a state official to do nothing more than refrain from violating [the] law,'" the state official is not the state for purposes of sovereign immunity.[26]

The counties in this case are protected from suit by sovereign immunity. To the extent SID #1 seeks money damages from the county treasurers acting in their official capacities, those suits are also viewed as against the county and are barred by sovereign immunity.

SID #1 also seeks prospective relief in the form of a declaration that the county treasurers have been incorrectly interpreting and applying § 33-114. To the extent this prospective relief is sought, it is not barred by principles of immunity.

We also note that we have considered, but reject, SID #1's contention that the counties are not entitled to immunity from suit against SID #1 because both entities are political subdivisions. SID #1 cites to no authority on this point which we find persuasive.

*Assessments for Municipal Purpose*
*or Municipal Taxes.*

We therefore turn to the merits of this litigation: whether the county treasurers correctly deducted a 2-percent fee from assessments collected on behalf of SID #1. These appeals center on the correct interpretation of the term "municipal" as used in § 33-114(3) and (4). Section 33-114 provides:

> Each county treasurer shall receive for and on behalf of the county for services rendered to other governmental subdivisions and agencies, when fees for services rendered by him or her are not otherwise specifically provided, the following fees: (1) On all sums of money

---

[24] *Id.*

[25] *Id.*

[26] *Id.* See *Doe v. Board of Regents, supra* note 9.

collected by him or her for each fiscal year, two percent of the sums so collected; (2) for the collection of all sums of money, general or bonded, of drainage, irrigation, or natural resources districts, one percent of the sums so collected; (3) for the collection of all sums of money for municipal taxes, general or special, including money for bond sinking fund or bond interest fund and school money, one percent of the sums so collected; and (4) for the collection of all sums of money for special assessments for municipal improvements, one and one-half percent of the sums so collected.

Here, the county treasurer deducted a 2-percent fee under § 33-114(1), but SID #1 argues that the appropriate fee was actually 1 percent for municipal taxes under § 33-114(3) and 1½ percent for municipal assessments under § 33-114(4). The district court concluded that the 2-percent fee was appropriate, because SID #1 was not a municipal corporation and that thus, its taxes and assessments were not municipal for purposes of § 33-114(3) and (4). These appeals present the question of whether taxes and improvements by a sanitary and improvement district are municipal under § 33-114.

[15] A sanitary and improvement district is a legislative creature, a political subdivision of the State of Nebraska.[27] Sanitary and improvement districts have been termed "quasi-municipal corporations" by some commentators and courts.[28] In fact, this court just recently referenced a sanitary and improvement district's status as a limited-purpose, quasi-municipal corporation when considering whether an interlocal agency was a quasi-municipal corporation or a private corporation.[29] Nevertheless, this court has concluded that for certain limited purposes involving the payment of warrants under

---

[27] *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986). See, also, *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985).

[28] *Rexroad, Inc. v. S.I.D. No. 66, supra* note 27.

[29] *City of Falls City v. Nebraska Mun. Power Pool*, 279 Neb. 238, 777 N.W.2d 327 (2010).

statute, a sanitary and improvement district was a munici-
pal corporation.[30]

But a determination of whether a sanitary and improvement
district is a municipal corporation is not necessary to our dis-
position of these appeals. Rather, § 33-114 requires not that the
assessments or taxes be assessed by a municipal corporation,
but only that those assessment or taxes be "municipal."

Black's Law Dictionary defines "municipal" as "[o]f, relat-
ing to, or involving a city, town, or local governmental unit."[31]
This definition suggests that if a tax or improvement is "munic-
ipal" in nature, it must be made by a city, town, or local
government.

A sanitary and improvement district is clearly not a city or
town, but it is a local governmental unit. Contrary to the dis-
trict court's conclusion, the board of trustees of a sanitary and
improvement district has the "power to pass all necessary ordi-
nances, orders, rules, and regulations for the necessary conduct
of its business and to carry into effect the objects for which the
sanitary and improvement district was formed."[32]

Sanitary and improvement districts have other powers
that suggest they are local governmental units. Sanitary and
improvement districts have the power to acquire property
by purchase or condemnation, though that power is tem-
pered by the need to gain approval for the acquisition by the
municipality or county having zoning jurisdiction over the
subject property.[33] Members of the board of trustees for any
given sanitary and improvement district are elected by spe-
cial election,[34] which is held by the election commissioner or
county clerk of the local county.[35] As noted above, sanitary

---

[30] *In re Application of S.I.D. No. 65*, 219 Neb. 647, 365 N.W.2d 456 (1985).

[31] Black's Law Dictionary 1175 (10th ed. 2014).

[32] Neb. Rev. Stat. § 31-733(3) (Reissue 2008). See, also, Neb. Rev. Stat.
§ 31-742 (Reissue 2008).

[33] Neb. Rev. Stat. § 31-736 (Reissue 2008); Neb. Rev. Stat. § 31-737
(Reissue 2008).

[34] Neb. Rev. Stat. § 31-735(1) (Cum. Supp. 2014).

[35] § 31-735(3).

and improvement districts have the power to levy taxes and issue bonds[36] and to enter into contracts.[37]

We noted in *Hollstein v. First Nat. Bank of Aurora*[38] that the primary function of a sanitary and improvement district is to install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential or commercial subdivisions. The statutes allowing for the creation and procedures surrounding sanitary and improvement districts clearly provide such districts with the ability to make such improvements.[39]

A sanitary and improvement district has many of the powers typically associated with a local governmental unit. If a city or town made the same improvements or levied the same tax alleged in these cases, such would undoubtedly be considered municipal in nature.

Moreover, as noted above, there is nothing in the plain language of § 31-114 that requires these improvements to be made or taxes to be levied by a municipal corporation. Rather, the statute simply requires the tax or improvement to be "municipal." This language is plain and unambiguous, and not open to further interpretation.[40]

## CONCLUSION

A sanitary and improvement district can levy municipal taxes and make municipal improvements. As such, we conclude that SID #1 has stated a cause of action under § 31-114. We reverse, and remand with directions to grant prospective declaratory relief.

Reversed and remanded with directions.

---

[36] Neb. Rev. Stat. § 31-739 (Reissue 2008). See, also, Neb. Rev. Stat. §§ 31-755 to 31-759 (Reissue 2008).

[37] Neb. Rev. Stat. § 31-740 (Reissue 2008).

[38] *Hollstein v. First Nat. Bank of Aurora*, 231 Neb. 711, 437 N.W.2d 512 (1989).

[39] § 31-740; § 31-744.

[40] *Kerford Limestone Co. v. Nebraska Dept. of Rev.*, 287 Neb. 653, 844 N.W.2d 276 (2014).