D.M., appellant, v. State of Nebraska
et al., appellees.
___ N.W.2d ___

Filed July 14, 2015.    No. A-14-376.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Tort Claims Act.** Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the State Tort Claims Act is a question of law.
4. **Tort Claims Act: Appeal and Error.** An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the State Tort Claims Act independent from the conclusion reached by the trial court.
5. **Constitutional Law: States: Immunity.** The immunity of states from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution and which they retain today.
6. **Actions: Immunity.** A suit against a state agency is a suit against the State and is subject to sovereign immunity.
7. ____: ____. A suit generally may not be maintained directly against an agency or department of the State, unless the State has waived its sovereign immunity.
8. **Statutes: Immunity.** Statutes authorizing suits against the State are to be strictly construed because such statutes are in derogation of the State's sovereign immunity.
9. **Immunity: Waiver.** Waiver of sovereign immunity will be found only where stated by the most express language or by such overwhelming

implications from the text as will leave no room for any other reason-able construction.

10. **Immunity: Waiver: Presumptions.** There is a presumption against waiver of sovereign immunity.

11. **Public Officers and Employees: Immunity.** Sovereign immunity has potential applicability to suits brought against state officials in their official capacities.

12. **Actions: Public Officers and Employees: Pleadings.** Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.

13. **Actions: Parties: Public Officers and Employees: Liability: Damages.** In an action for the recovery of money, the State is the real party in interest because a judgment against a public servant in his official capacity imposes liability on the entity that he represents.

14. **Actions: Public Officers and Employees: Immunity: Waiver: Damages.** Unless waived, sovereign immunity bars a claim for money even if the plaintiff has named individual state officials as nomi-nal defendants.

15. **Tort Claims Act: Immunity: Waiver.** The State Tort Claims Act waives the State's sovereign immunity with respect to certain, but not all, types of tort actions.

16. **Tort Claims Act: Public Officers and Employees: Immunity.** The State Tort Claims Act allows lawsuits against the State and public offi-cials for certain tortious conduct, but not all.

17. **Actions: Immunity: Waiver.** In the absence of a waiver, sovereign immunity bars all suits against the State and state agencies, regardless of the relief sought.

18. **Tort Claims Act: Immunity: Waiver: Public Officers and Employees.** Although a state employee or officer may be allegedly sued individ-ually, if he or she is acting within the scope of employment or office, the State Tort Claims Act still applies and provides immunity, unless such has been waived.

19. **Tort Claims Act: Immunity: Negligence: Liability: Waiver.** The State Tort Claims Act waives the State's sovereign immunity for tort claims against the State for money only on account of damage to or loss of property or on account of personal injury or death caused by the neg-ligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under cir-cumstances in which the State, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

20. **Tort Claims Act: Immunity: Waiver.** Among the claims for which the State has not waived its sovereign immunity are claims arising out of

assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights, commonly referred to as the intentional tort exception.

21. **Public Officers and Employees: Immunity: Negligence.** To determine whether a claim arises from an intentional assault or battery and is therefore barred by sovereign immunity pursuant to the intentional tort exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tort-feasor or the breach of some separate duty independent from the employment relation.

22. \_\_\_\_: \_\_\_\_: \_\_\_\_. If the allegation is that the government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception bars the claim; otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of government employees plausibly could be ascribed to the negligence of the tort-feasor's supervisors and would frustrate the purposes of the exception.

23. **Statutes: Immunity: Waiver.** A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction.

24. **Public Officers and Employees: Immunity.** A plaintiff cannot avoid the reach of the intentional tort exception by framing his or her complaint in terms of negligent failure to prevent the assault and battery. The exception does not merely bar claims for assault or battery; in sweeping language it excludes any claim arising out of assault or battery.

25. **Tort Claims Act: Immunity: Waiver: Pleadings: Proof.** Exceptions found in Neb. Rev. Stat. § 81-8,219 (Supp. 2011) to the general waiver of tort immunity are matters of defense which must be pled and proved by the State.

26. **Actions: Immunity: Waiver.** Nebraska has not waived its sovereign immunity with regard to 42 U.S.C. § 1983 (2012) suits brought against it.

27. **Constitutional Law: Immunity: Public Officers and Employees.** The enactment of 42 U.S.C. § 1983 (2012) did not abrogate the State's 11th Amendment immunity by creating a remedy against the State.

28. **Statutes: Constitutional Law: Immunity: Waiver.** Neb. Rev. Stat. § 20-148 (Reissue 2012) is a procedural statute designed to allow plaintiffs to bypass administrative procedures in discrimination actions against private employers; it does not operate to waive sovereign immunity.

29. **Public Officers and Employees: Immunity.** Sovereign immunity does not apply when state officials are sued in their individual capacities— that is, when a suit seeks to hold state officials personally liable.

30. **Actions: Parties: Public Officers and Employees: Waiver.** Sovereign immunity does not apply even when state officials are sued in their individual capacities for acts taken within the scope of their duties and authority as state officials.

31. **Public Officers and Employees: Liability.** Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law.

32. **Limitations of Actions: Dismissal and Nonsuit.** Neb. Rev. Stat. § 25-217 (Reissue 2008) provides that a plaintiff has 6 months from the date the complaint was filed to serve the defendants, at which point the complaint shall be dismissed without prejudice.

33. **Immunity.** Qualified immunity is an affirmative defense which must be affirmatively pleaded.

34. **Appeal and Error.** An appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.

35. **Constitutional Law: Public Officers and Employees: Liability.** The standard by which a supervisor is held liable under 42 U.S.C. § 1983 (2012) in his or her individual capacity for the actions of a subordinate is extremely rigorous.

36. **Constitutional Law: Public Officers and Employees: Liability: Proof.** To hold a supervisor liable under 42 U.S.C. § 1983 (2012), the plaintiff must establish that the supervisor personally participated in the unconstitutional conduct or was otherwise the moving force of the violation by authorizing, approving, or knowingly acquiescing in the unconstitutional conduct.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Julie A. Jorgensen, of Morrow, Willnauer, Klosterman & Church, L.L.C., for appellant.

Jon Bruning, Attorney General, and David A. Lopez for appellee.

Irwin, Riedmann, and Bishop, Judges.

BISHOP, Judge.

## INTRODUCTION

D.M., previously an inmate at the Omaha Correctional Center (OCC), filed a complaint against the State of Nebraska and the Nebraska Department of Correctional Services (DCS) and against Robert P. Houston, the director of the DCS; John Doe #1 (Doe), an investigator for the DCS; Jim Brown, a unit manager at the OCC; and Anthony Hansen, a prison guard at the OCC, all in their individual and official capacities. D.M. alleged that he was sexually assaulted by Hansen while D.M. was incarcerated at the OCC and that when D.M. reported the sexual assault, he was placed in disciplinary segregation for over 30 days. D.M.'s complaint contained several tort and constitutional violation claims against the above-named defendants; pursuant to a motion to dismiss filed by the State, the Douglas County District Court dismissed D.M.'s entire complaint with prejudice, concluding that all of his claims were barred by sovereign immunity. We affirm in part, and in part reverse and remand for further proceedings.

## BACKGROUND

D.M. filed a complaint on December 10, 2013, alleging the following facts:

D.M. was admitted as an inmate to the OCC in December 2011, with an expectation of parole in February 2012. On December 10, 2011, Hansen approached D.M. in the cafeteria with the proposition to meet in the chapel to engage in sexual activity. D.M. attempted to avoid and deflect Hansen's sexual advances. Hansen later approached D.M. and advised that there were cameras in the chapel so they should meet in the commons area of the OCC. After D.M. again attempted to deflect Hansen's sexual advances, Hansen spoke to D.M. regarding his parole date, which D.M. took as a threat to his future release based on previous encounters with Hansen where he had advised D.M. that if he did not comply with Hansen's sexual requests, Hansen would cause D.M.

or his friends to lose "good time" or be placed in disciplinary segregation.

D.M. reluctantly met with Hansen in the commons area based on his threats, at which point Hansen shoved D.M. into a wall and forcibly kissed him, pushed him down to his knees, and ejaculated into D.M.'s mouth. D.M. preserved Hansen's bodily fluids in a napkin. D.M. then orally reported the incident to Brown, D.M.'s unit manager. D.M. also filled out a formal complaint and requested a grievance form.

D.M. alleged that immediately after the incident and as a result of his reporting Hansen's sexual assault, he was placed in disciplinary segregation, where he had limited telephone privileges and no contact with other inmates. Prison guards were instructed not to converse with him while he was in segregation, and D.M. was instructed by representatives of the defendants not to speak to anyone about the sexual assault. D.M. was subjected to disciplinary segregation for over 30 days while the investigation was conducted. D.M. requested that he be "transferred to another medium security facility, but was told there was no room at any other facility."

D.M. alleged that Doe visited D.M. on numerous occasions, advising him that he would get more jail time for lying and that he was "ruining" Hansen's life. During the investigation, Hansen was permitted to work for a period of time and subsequently was given paid leave while D.M. remained in solitary confinement.

DNA testing confirmed that the bodily fluids collected by D.M. were Hansen's; Hansen subsequently pled guilty to sexual assault. When the investigation was complete, D.M. alleges he was "transferred from a minimum security facility to a maximum security facility." (We note that D.M.'s complaint is inconsistent as to whether he was in a minimum or medium security facility at the time of the assault.)

During the investigation, D.M. repeatedly requested counseling services; after "numerous" requests, and at the conclusion of the investigation, D.M. was given two therapy sessions after his transfer. D.M. continued to see a therapist

subsequent to his release; suffers from intimacy issues, depression, severe anxiety, and severe emotional distress; has been prescribed medication; and is expected to need therapy and psychiatric treatment.

D.M. alleged nine causes of action arising out of the above facts: (1) negligent hiring/supervising of Hansen, (2) failure to protect, (3) retaliation, (4) respondeat superior, (5) denial of equal protection, (6) cruel and unusual punishment, (7) intentional infliction of emotional distress as to Hansen, (8) intentional infliction of emotional distress as to all the defendants, and (9) negligent infliction of emotional distress as to all the defendants. D.M. sought damages, reasonable attorney fees, permission to assert a claim for punitive damages, and further relief as may be ordered. D.M. invoked jurisdiction pursuant to the State Tort Claims Act (STCA), Neb. Rev. Stat. §§ 81-8,209 to 81-8,235 (Reissue 2008, Cum. Supp. 2010 & Supp. 2011); Neb. Rev. Stat. § 20-148 (Reissue 2012); the civil rights laws of the United States, including 42 U.S.C. § 1983 (2012); and the Nebraska Constitution.

On January 30, 2014, Houston, in both his official and individual capacities; the State; the DCS; and Doe, Brown, and Hansen, in their official capacities only, filed a motion to dismiss pursuant to Neb. Ct. R. of Pldg. § 6-1112(b)(6) for failure to state a claim, and also that "the Defendants are protected by sovereign immunity."

A hearing on the motion was held on February 25, 2014. Our record does not contain the bill of exceptions from this hearing. The court entered an order on March 31. The court found:

> [T]he alleged rape of [D.M.] by . . . Hanson [sic] was an assault as [are] all of the causes of action set forth in his complaint and, thus, the intentional tort exception of [§] 81-8,219(4) applies and bars [D.M.'s] action against the Defendants. The Court further finds that the complaint cannot be amended to state a cause of action and, therefore, that [D.M.'s] complaint should be dismissed with prejudice.

D.M. filed a "Motion for Reconsideration" on April 11, 2014. He requested that the court reconsider its dismissal of all causes of action against all the defendants because several of his claims were based on retaliation for reporting the assault and because several claims were brought against "State actors" in their individual capacities under Nebraska's civil rights statute and 42 U.S.C. § 1983. He further argued that his claims under § 1983 should not be affected by state law immunity because it is preempted by federal law. The court overruled D.M.'s motion on April 29.

D.M. timely filed this appeal.

## ASSIGNMENTS OF ERROR

D.M. assigns seven errors on appeal, which we summarize as follows: The district court erred in dismissing his entire complaint with prejudice, without leave to amend, based on its conclusion that all of his claims were barred by sovereign immunity.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo. *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015). When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion. *Id.*

[3,4] Whether the allegations made by a plaintiff present a claim that is precluded by exemptions set forth in the STCA is a question of law. *Hall v. County of Lancaster*, 287 Neb. 969, 846 N.W.2d 107 (2014). An appellate court has an obligation to reach its conclusion on whether a claim is precluded by exemptions set forth in the STCA independent from the conclusion reached by the trial court. See *Hall v. County of Lancaster, supra*.

## ANALYSIS

D.M. filed tort and constitutional claims against the State and the DCS and against Houston, Doe, Brown, and Hansen, in their individual and official capacities, seeking monetary damages. The district court dismissed D.M.'s claims against all the defendants on the basis of sovereign immunity, concluding that all his asserted claims arose from the sexual assault and that sovereign immunity is not waived for claims arising out of such an intentional tort. However, D.M.'s complaint asserted two distinct set of facts: (1) the assault and (2) D.M.'s reporting of the assault and the retaliatory conduct of various defendants in response to his report. Additionally, besides the various tort claims alleged by D.M., he also asserted constitutional and civil rights claims, including First Amendment retaliation, denial of equal protection based upon his disciplinary segregation upon reporting, and Eighth Amendment claims related to the assault and his treatment after reporting.

[5-10] We begin by reviewing the general principles of sovereign immunity upon which the district court relied to dismiss all claims against all the defendants. The immunity of states from suit is a fundamental aspect of the sovereignty which the states enjoyed before the ratification of the Constitution and which they retain today. *SID No. 1 v. Adamy*, 289 Neb. 913, 858 N.W.2d 168 (2015). A suit against a state agency is a suit against the State and is subject to sovereign immunity. *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014) (*Anthony II*). A suit generally may not be maintained directly against an agency or department of the State, unless the State has waived its sovereign immunity. *Id*. Statutes authorizing suits against the State are to be strictly construed because such statutes are in derogation of the State's sovereign immunity. *SID No. 1 v. Adamy, supra.* Waiver of sovereign immunity will be found only where stated by the most express language or by such overwhelming implications from the text as will leave no

room for any other reasonable construction. *Id*. This principle has been said to create a presumption against waiver. *Dean v. State*, 288 Neb. 530, 849 N.W.2d 138 (2014).

[11-14] Sovereign immunity has potential applicability to suits brought against state officials in their official capacities. See *Anthony II, supra*. Official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. *Id.* In an action for the recovery of money, the State is the real party in interest because a judgment against a public servant in his official capacity imposes liability on the entity that he represents. See *id*. Unless waived, sovereign immunity bars a claim for money even if the plaintiff has named individual state officials as nominal defendants. See *id*.

[15,16] The STCA waives the State's sovereign immunity with respect to certain, but not all, types of tort actions. See *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005). In other words, the STCA allows lawsuits against the State and public officials for certain tortious conduct, but not all. We first consider D.M.'s tort claims against the various defendants, followed by a review of his constitutional claims.

Tort Claims Against State, DCS,
and Named Individuals

[17,18] In the absence of a waiver, sovereign immunity bars all suits against the State and state agencies, regardless of the relief sought. See *Anthony K. v. State*, 289 Neb. 523, 855 N.W.2d 802 (2014) (*Anthony I*). The DCS is a state agency. See *Perryman v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 66, 568 N.W.2d 241 (1997), *disapproved on other grounds, Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999). Sovereign immunity also has potential applicability to suits brought against state officials in their official capacities; official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent. See *Anthony II, supra*. In an action for the recovery of money, the State is the real party in interest

because a judgment against a public servant in his official capacity imposes liability on the entity that he represents. See *id*. Unless waived, sovereign immunity bars a claim for money even if the plaintiff has named individual state officials as nominal defendants. See *id*. Further, although a state employee or officer may be allegedly sued individually, if he or she is acting within the scope of employment or office, the STCA still applies and provides immunity, unless such has been waived. *Bojanski v. Foley*, 18 Neb. App. 929, 798 N.W.2d 134 (2011).

D.M.'s complaint contains tort claims against Houston, Doe, and Brown, in both their official and individual capacities. However, while D.M. purports to have brought his tort claims against those individuals in their individual capacities, in looking at D.M.'s complaint, it is clear that his tort allegations on the part of Houston, Doe, and Brown occurred while they were acting within the scope of their employment with the DCS, and therefore, the tort claims against those defendants all fall within the STCA. See *Bojanski v. Foley, supra*.

[19,20] As previously noted, the STCA waives the State's sovereign immunity with respect to certain, but not all, types of tort actions. *Johnson v. State, supra*. The STCA waives the State's sovereign immunity for tort claims against the State for money only on account of damage to or loss of property or on account of personal injury or death caused by the negligent or wrongful act or omission of any employee of the state, while acting within the scope of his or her office or employment, under circumstances in which the State, if a private person, would be liable to the claimant for such damage, loss, injury, or death. See § 81-8,210(4). However, the State's sovereign immunity is not waived with respect to the types of claims listed in § 81-8,219. *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005). Among the claims for which sovereign immunity is not waived are claims "arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

§ 81-8,219(4). This subsection is commonly referred to as the "intentional tort exception." See *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011). The district court in the instant case concluded that all of D.M.'s claims were barred by this exception.

[21-23] To determine whether a claim arises from an intentional assault or battery and is therefore barred by sovereign immunity pursuant to the intentional tort exception, a court must ascertain whether the alleged negligence was the breach of a duty to select or supervise the employee-tort-feasor or the breach of some separate duty independent from the employment relation. *Johnson v. State, supra* (quoting *Sheridan v. United States*, 487 U.S. 392, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988) (Kennedy, J., concurring in judgment)). If the allegation is that the government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception bars the claim. *Id.* Otherwise, litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of government employees plausibly could be ascribed to the negligence of the tort-feasor's supervisors. *Id.* To allow such claims would frustrate the purposes of the exception. *Id.* A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction. *Stick v. City of Omaha*, 289 Neb. 752, 857 N.W.2d 561 (2015).

In *Johnson v. State, supra*, a female inmate at the OCC alleged that she was sexually assaulted by an employee of the DCS assigned to work at the OCC. She filed suit against the State, the DCS, and the OCC, alleging two theories of recovery: negligence and intentional infliction of emotional distress. With respect to her negligence claims, the female inmate alleged the defendants were negligent in violating state jail standards with respect to the housing of female inmates, failing to properly hire and supervise its employees, and failing to properly discipline the employee who perpetrated the

sexual assault. Our Supreme Court concluded that each of the above causes of action was based upon the employment relationship between her alleged assailant and the defendants and that thus, the intentional tort exception of § 81-8,219(4) applied to bar all her causes of action.

[24] D.M. does not dispute that his claims for negligent hiring/supervising and respondeat superior are barred by sovereign immunity, because both tort claims arise out of the intentional sexual assault, for which the State has not waived its sovereign immunity. See § 81-8,219(4). See, also, *Johnson v. State*, 270 Neb. 316, 700 N.W.2d 620 (2005). D.M.'s cause of action for failure to protect alleges that the "Defendants" breached their duty to protect him from the sexual assault; however, such a tort claim, although framed as an allegation of negligence, nevertheless is a claim "arising out of assault [or] battery." § 81-8,219(4). Our Supreme Court has stated:

"'[A plaintiff] cannot avoid the reach of [the intentional tort exception] by framing [his or] her complaint in terms of negligent failure to prevent the assault and battery. [The exception] does not merely bar claims *for* assault or battery; in sweeping language it excludes any claim *arising out of* assault or battery. . . .'"

*Britton v. City of Crawford*, 282 Neb. 374, 384-85, 803 N.W.2d 508, 517 (2011) (emphasis in original) (quoting *Johnson v. State, supra*). This provision covers claims that sound in negligence but stem from a battery committed by a government employee. See *Britton v. City of Crawford, supra*. Accordingly, D.M.'s tort claims for negligent hiring/supervising, respondeat superior, and failure to protect were properly dismissed against the State and the DCS; Houston, Doe, and Brown; and Hansen, in his official capacity, on the basis of sovereign immunity because such claims arose from the sexual assault.

[25] However, D.M.'s claims for intentional and negligent infliction of emotional distress differ from the above claims in that they are not based on claims of emotional distress resulting from or arising out of the sexual assault; rather, D.M.

bases these two claims on his allegations that he was punished and retaliated against by different OCC employees for reporting the assault and that he was placed in solitary confinement and subjected to threats of legal action or prosecution for perjury for making his report. D.M.'s claims in this regard therefore do not arise from the assault, but, rather, from his reporting of the assault and the resulting retaliatory conduct by OCC employees, which conduct was separate and distinct from Hansen's assault of D.M. We therefore conclude that the district court erred in dismissing D.M.'s claims for intentional and negligent infliction of emotional distress on the basis of sovereign immunity, since these claims arose from D.M.'s reporting of the assault rather than the assault itself. As our record does not reflect that the State raised or argued any other exception contained in § 81-8,219 in the district court below, our review is limited solely to whether D.M.'s claims are barred by the intentional tort exception to the STCA. See *Sherrod v. State*, 251 Neb. 355, 557 N.W.2d 634 (1997) (holding that exceptions found in § 81-8,219 to general waiver of tort immunity are matters of defense which must be pled and proved by State).

Finally, D.M. alleged a separate cause of action against Hansen for intentional infliction of emotional distress as a result of his sexual assault of D.M. Such a claim against Hansen in his individual capacity would clearly not be governed by the STCA, as sexual assault would not fall within the scope of Hansen's employment with the DCS. The district court therefore erred in dismissing this claim against Hansen in his individual capacity as barred by sovereign immunity.

In sum, we affirm the district court's dismissal of D.M.'s tort claims for negligent hiring/supervising, failure to protect, and respondeat superior against the State and the DCS; Houston, Doe, and Brown, in both their individual and official capacities; and Hansen, in his official capacity, on the basis that such claims arose out of Hansen's sexual assault and were therefore barred by sovereign immunity. See § 81-8,219(4).

We further conclude that the district court erred in dismissing D.M.'s claim against Hansen in his individual capacity for intentional infliction of emotional distress. Finally, we conclude that D.M.'s tort claims for intentional and negligent infliction of emotional distress were based on separate wrongful conduct subsequent to D.M.'s report, which conduct did not arise out of Hansen's sexual assault within the meaning of § 81-8,219(4), and that the district court therefore erred in dismissing those two claims against the above defendants on that basis.

### CONSTITUTIONAL CLAIMS AGAINST STATE, DCS, AND NAMED INDIVIDUALS IN THEIR OFFICIAL CAPACITIES

D.M.'s complaint contains three constitutional claims for which he seeks monetary damages under 42 U.S.C. § 1983 and § 20-148: 1st Amendment retaliation, 5th and 14th Amendment equal protection and due process, and 8th Amendment cruel and unusual punishment. We conclude that all of his constitutional claims are barred by sovereign immunity against the State, the DCS, and the named individuals in their official capacities.

[26-28] Nebraska has not waived its sovereign immunity with regard to § 1983 suits brought against it. *Anthony I.* Neither did the enactment of § 1983 abrogate the State's 11th Amendment immunity by creating a remedy against the State. *Anthony I.* Likewise, § 20-148 is a procedural statute designed to allow plaintiffs to bypass administrative procedures in discrimination actions against private employers; it does not operate to waive sovereign immunity. See *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014). As such, there is no waiver of sovereign immunity by the State with respect to D.M.'s constitutional violation claims against the State, the DCS, or the named individuals in their official capacities, and the district court therefore properly dismissed those claims on the basis of sovereign immunity.

### Constitutional Claims Against
### Named Individuals in Their
### Individual Capacities

[29-31] The district court dismissed all of D.M.'s constitutional claims under 42 U.S.C. § 1983 against the named individuals—Houston, Doe, Brown, and Hansen—in their individual capacities on the basis that such claims were barred by sovereign immunity. However, sovereign immunity does not apply when state officials are sued in their individual capacities—that is, when a suit seeks to hold state officials personally liable. *Anthony II*. This is true even when state officials are sued in their individual capacities for acts taken within the scope of their duties and authority as state officials. *Id.* Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. *Id.* As such, the district court erred when it dismissed D.M.'s constitutional claims against the named defendants in their individual capacities on the basis of sovereign immunity.

[32] The State claims that this court should nevertheless affirm the dismissal of D.M.'s claims against Doe and Brown in their individual capacities because "[D.M.] served only Houston and Hansen individually." Brief for appellees at 15. At oral argument to this court, the State argued that there was "never a live suit" against Brown or Doe in their individual capacities, because D.M. did not serve them individually. D.M. filed his complaint on December 10, 2013, and the district court dismissed all of his claims, with prejudice, including his claims against all named individuals in their individual capacities, on March 31, 2014, approximately 3½ months after D.M. filed his complaint. Pursuant to Neb. Rev. Stat. § 25-217 (Reissue 2008), a plaintiff has 6 months from the date the complaint was filed to serve the defendants, at which point the complaint shall be dismissed without prejudice. If D.M. had not properly served the named defendants individually

as the State claims on appeal, pursuant to § 25-217, D.M. still had 2½ months to effectuate such service. Moreover, our record does not reflect the manner in which D.M.'s complaint was served, and as such, our record is insufficient to review the State's claimed deficient service.

[33,34] The State also contends that although the trial court may have mistakenly dismissed D.M.'s claims under § 1983 against Houston in his individual capacity upon a finding that sovereign immunity barred the claims, this court should nevertheless affirm the district court's dismissal because Houston is shielded by qualified immunity. Qualified immunity is an affirmative defense which must be affirmatively pleaded. See *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003). It is a longstanding rule that we will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Because the affirmative defense of qualified immunity was not raised in any of the pleadings below and was not presented to or passed upon by the trial court, we decline to do so for the first time on appeal.

[35,36] However, we do agree with the State that D.M. has failed to state a constitutional claim pursuant to § 1983 with respect to Houston in his individual capacity. The standard by which a supervisor is held liable under § 1983 in his or her individual capacity for the actions of a subordinate is extremely rigorous. See *Potter v. Board of Regents*, 287 Neb. 732, 844 N.W.2d 741 (2014). The plaintiff must establish that the supervisor personally participated in the unconstitutional conduct or was otherwise the moving force of the violation by authorizing, approving, or knowingly acquiescing in the unconstitutional conduct. *Id*. D.M. has alleged no facts in his complaint sufficient to establish Houston's personal liability under § 1983, and therefore, the district court did not err in dismissing D.M.'s constitutional claims against Houston individually.

## CONCLUSION

In summary, as to the tort claims, we affirm the district court's dismissal of D.M.'s tort claims for negligent hiring/supervising, failure to protect, and respondeat superior against the State and the DCS; Houston, Doe, and Brown, in both their individual and official capacities; and Hansen, in his official capacity. We reverse, and remand for further proceedings D.M.'s tort claims for intentional and negligent infliction of emotional distress against the State and the DCS and against Houston, Doe, and Brown, because those claims are alleged to have arisen out of D.M.'s reporting of the sexual assault and not the assault itself. We reverse, and remand for further proceedings D.M.'s claim for intentional infliction of emotional distress against Hansen.

As to the constitutional claims, we affirm the dismissal of D.M.'s constitutional claims against the State, the DCS, and the named individuals in their official capacities, and against Houston in both his official and individual capacity. We reverse, and remand for further proceedings D.M.'s remaining constitutional claims against Brown, Doe, and Hansen in their individual capacities.

Affirmed in part, and in part reversed and remanded for further proceedings.