SANITARY AND IMPROVEMENT DISTRICT NO. 95 OF DOUGLAS COUNTY, NEBRASKA, A CORPORATION, ET AL., APPELLANTS, V. CITY OF OMAHA, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE.

376 N.W.2d 767

Filed November 22, 1985.    No. 83-775.

Lyle E. Strom of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, and Robert J. Huck of Croker, Huck & McReynolds, for appellants.

Herbert M. Fitle, Omaha City Attorney, and Charles K. Bunger, for appellee.

KRIVOSHA, C.J., BOSLAUGH, HASTINGS, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

Sanitary and Improvement District No. 95 of Douglas County, Nebraska, a sanitary and improvement district created pursuant to the laws of the State of Nebraska, and other persons who are electors, residents, and owners of real and personal property located within the boundaries of S.I.D. No. 95 (hereinafter collectively referred to as S.I.D. No. 95) appeal from an order entered by the district court for Douglas County, Nebraska, denying S.I.D. No. 95's request for a permanent injunction to enjoin the City of Omaha from enforcing annexation ordinance No. 29545. By this ordinance the City of Omaha annexed Mockingbird Hills West Subdivision, the area served by S.I.D. No. 95.

S.I.D. No. 95 maintains that the annexation was invalid and should have been enjoined because (1) the city failed to follow the provisions of Neb. Rev. Stat. §§ 19-3101 and 14-373 (Reissue 1983), which S.I.D. No. 95 maintains was mandatory; (2) the city annexed Mockingbird Hills West Subdivision solely for the purpose of generating revenues; (3) the city failed to refer the proposed annexation to the planning department for a determination as to whether the annexation conformed with the city's master plan as required by § 7.06 of Omaha's home rule charter of 1956; (4) the city failed to make a good faith study of its ability to provide essential services to the annexed area; and (5) Neb. Rev. Stat. § 14-117 (Reissue 1983) is unconstitutional and void in that it subjects S.I.D. No. 95 to taxation without representation and operates to deny S.I.D. No. 95 and those similarly situated due process of law and equal protection of the law in contravention of the fifth and fourteenth amendments of the Constitution of the United States and §§ 3 and 21 of article I of the Constitution of Nebraska. We believe the district court was correct in denying the injunction, and, accordingly, we affirm.

Mockingbird Hills West Subdivision is located in Douglas

County, Nebraska, and is generally bounded by 96th Street on the east, 108th Street on the west, L Street on the north, and Q Street on the south. The area contains 268 acres. Within the area there are 527 single-family homes, 14 duplexes, 46 apartments, 1 school, 1 park, 6.9 miles of improved streets, sanitary and storm sewers, 2 commercial areas, and 2,103 residents. On July 28, 1981, the Omaha City Council adopted ordinance No. 29545, which annexed Mockingbird Hills West Subdivision to the City of Omaha. The mayor signed the ordinance on July 29, 1981.

We turn first to the assignment of error concerning the city's failure to comply with either § 14-373 or § 19-3101. Section 14-373 provides:

> Each city of the metropolitan class is authorized and required to prepare a plan for its future physical development and growth. Such plan shall be prepared, and shall be carried out by an appropriate city board or official. The plan *may* include such lands outside the corporate limits of the city as may bear a relation to the development of the city. A planning board may be given such other powers and duties by statute or charter as may be appropriate.

(Emphasis supplied.)

Section 19-3101 provides as follows:

> The county board of any county in which there is a city of the metropolitan or primary class shall appoint an advisory committee comprised of persons residing outside of the city of the metropolitan or primary class, within three miles of the corporate limits thereof and outside of any city or village, and owning property within said three-mile zone. Such committee shall be composed of five members to be appointed for a two-year term and such committee shall advise the planning commission and city council of such metropolitan or primary city on all matters of planning and zoning relating to that area which is outside of the metropolitan or primary city, within three miles of the corporate limits of such city, and outside of any city or village.

While the record in this case would support the contention that the annexation ordinance was not submitted to a planning board pursuant to § 14-373 or to an advisory board pursuant to § 19-3101, the evidence does show that prior to the enactment of the ordinance by the Omaha City Council, public hearings were held before the Omaha Planning Commission. On July 8, 1981, the planning board recommended passage of the annexation by a vote of 7 to 0. More importantly, however, we believe that neither § 14-373 nor § 19-3101 applies where a city of the metropolitan class seeks to adopt an ordinance annexing land adjacent to the city's boundaries. Therefore, the fact that neither of these sections may have been complied with would not be of significance.

The authority for a city of the metropolitan class to annex land is specifically provided by § 14-117. That section provides:

> The corporate limits of any city of the metropolitan class shall be fixed and determined by the council of such city by ordinance. The city council of any metropolitan city may at any time extend the corporate limits of such city over any lands, lots, tracts, street or highway, such distance as may be deemed proper in any direction, and may include, annex, merge or consolidate with such metropolitan city, by such extension of its limits, any adjoining city of the first class having less than 10,000 population or any adjoining city of the second class or village . . . .

There is no contention made that § 14-117 was not complied with or that the manner in which the ordinance was adopted did not comply with the laws of the State of Nebraska.

An examination of both §§ 14-373 and 19-3101 discloses that neither section applies with regard to annexations. Section 14-373 requires each city to prepare a plan for its future *physical* development and growth. The section then further provides that "[t]he plan *may* include such lands outside the corporate limits of the city as may bear a relation to the development of the city." (Emphasis supplied.) The fact that the requirement imposed upon the city is limited only to land within the boundaries of the metropolitan city is, in our view, significant.

While the statute authorizes the city to include land outside the city if it desires to do so in order to effect orderly planning for physical development, the statute does not impose such a requirement. We have regularly held that the word "may" is permissive and not mandatory. See *Buhrmann v. Sellentin*, 218 Neb. 288, 352 N.W.2d 907 (1984). It would therefore be anomalous if, on the one hand, we were to hold that a city of the metropolitan class was not required to include within its plan lands outside the corporate limits of the city and, at the same time, hold that the failure to prepare a plan which included land outside the city prevented the city from annexing the land. We do not believe that such a meaning can be obtained from a reading of the statute. Where the words of a statute are plain, direct, and unambiguous, no interpretation is needed to ascertain their meaning. See *City of Scottsbluff v. Tiemann*, 185 Neb. 256, 175 N.W.2d 74 (1970).

Similarly, we believe that § 19-3101 has no application to the instant case. Section 19-3101 provides in part that the function of the committee shall be to advise the planning commission and city council "on all matters of planning and zoning relating to that area which is outside of the metropolitan or primary city, within three miles of the corporate limits of such city . . . ." It appears to us that the purpose of this section is to assist the city in regulating land which is not a part of the city but is within its zoning jurisdiction. See Neb. Rev. Stat. § 14-116 (Reissue 1983). The instant case is not dissimilar to the case of *City of Parkview v. City of Grand Island*, 188 Neb. 267, 196 N.W.2d 197 (1972). In that case the city of Parkview sought to have an annexation ordinance adopted by the city of Grand Island declared invalid. One of the grounds urged by the city of Parkview was Grand Island's failure to first obtain prior recommendation from the regional planning commission for Hall County, Nebraska, as required by Neb. Rev. Stat. § 18-1306 (Reissue 1970). In rejecting that contention we observed that the section did not require a recommendation in regard to annexation and the failure to do so did not invalidate the ordinance. We believe the same to be applicable in the instant case. Section 19-3101 simply affords persons residing

outside of the boundaries of a metropolitan city, but within the 3-mile zoning area, an opportunity to make recommendations as to how the land outside of the boundaries shall be regulated and how the land may be used. Once the land is to be annexed, however, the provisions of § 19-3101 have no application. Because neither § 14-373 nor § 19-3101 has any direct application to the act of annexation, the failure of the city to comply with either section is of no relevance.

We next turn to S.I.D. No. 95's claim that the city failed to comply with §§ 7.04 and 7.06 of Omaha's home rule charter. Section 7.06 of the city charter requires that certain matters be referred to the planning board for a determination as to whether the act being contemplated conforms with the city's master plan. The ordinance provides:

> No ordinance or resolution which deals with the acquisition, extension, widening, narrowing, removal, relocation, vacation, abandonment, sale, or change in the use of any public way, transportation route, ground, open space, building, or structure, the subject matter of which has not been previously reported on by the Planning Department in accordance with the provisions of section 7.05 of this charter, shall be adopted by the Council unless and until such ordinance or resolution shall first have been referred to the Planning Department and a report rendered thereon regarding conformity of the matter involved to the master plan. . . .

Section 7.04 prescribed what the master plan shall contain.

While it may reasonably be argued that the annexation of adjoining land does not fall within any of the categories set out in § 7.06 and, further, that the planning department did in fact render a report when it advised the planning commission before its action, we need not reach those issues. It is beyond question that the act of annexation is a matter of statewide concern, and therefore the state statutes, and not the city charter provision, are controlling. In *City of Millard v. City of Omaha*, 185 Neb. 617, 621, 177 N.W.2d 576, 579 (1970), we said:

> The determination of the city of Omaha to annex or not to annex outlying property is a purely municipal concern,

but this is· not true of the annexation process which necessarily affects property outside the municipality and persons who are not inhabitants of the city. The protection of such persons and property is a matter of state concern and in fulfillment of its duties in this respect, the state must fix the rules and regulations pertaining to annexation procedures.

See, also, *S.I.D. No. 95 v. City of Omaha*, 219 Neb. 564, 365 N.W.2d 398 (1985). Being, therefore, a matter of statewide ·concern, the provisions of § 14-117 are the applicable requirements for annexation, and not the City of Omaha's charter. As we have indicated, while we have doubt as to whether annexation is included within the provisions of charter § 7.06, we nevertheless need not reach that issue because the evidence conclusively establishes that the requirements of the state statute were, in all respects, met, and the annexation, therefore, on that basis, was valid.

That brings us, then, to S.I.D. No. 95's next claim, that the annexation was undertaken simply because the city desired to obtain revenue. While it is true that a municipality cannot annex property for revenue purposes only, see, *Witham v. City of Lincoln*, 125 Neb. 366, 250 N.W. 247 (1933), and *United States v. City of Bellevue, Nebraska*, 334 F. Supp. 881 (D. Neb. 1971), *aff'd* 474 F.2d 473 (8th Cir. 1973), it is likewise true that the evidence in this case does not support that claim. By annexing the S.I.D., the City of Omaha assumed the obligation for all of the S.I.D.'s liabilities. See Neb. Rev. Stat. § 14-118 (Reissue 1983). Therefore, to suggest that the city will acquire all of the funds of the S.I.D. without recognizing that it will also incur substantial obligations is to ignore the reality of the matter. Certainly, a city has a right to defer annexing an adjacent area until it determines that it can reasonably assume the obligations which will be imposed upon the city by reason of the annexation. The facts in the instant case do not support a claim that the city's only objective in annexing the land in question was to become the recipient of increased revenues, free of corresponding obligations. The city was acquiring a fully developed area, and therefore, in addition to paying off any

and all bond obligations of the area, it further assumed the responsibility of providing all necessary improvements and services. " 'The burden is on one who attacks an ordinance, valid on its face and enacted under lawful authority, to prove facts to establish its invalidity. . . .' " *Wagner v. City of Omaha*, 156 Neb. 163, 167, 55 N.W.2d 490, 493 (1952). The trial court was correct in concluding that the annexation was not solely for revenue purposes.

What has been said with regard to the revenue may likewise be said with regard to the claim that the city has not studied the feasibility of providing services to the annexed area. There is no evidence to support a claim that the city is not prepared to provide necessary services. No evidence has been introduced to support a claim that the City of Omaha will not maintain and repair the streets and sewers, or shovel the snow upon the streets, or provide police or fire protection. In the event that the city should fail to provide adequate services for the area, the citizens may have some claim. But the mere fact that a feasibility study was not conducted to determine whether the city would perform the duties which it is by law obligated to perform does not render the annexation invalid.

S.I.D. No. 95's final claim of error is that the district court erred in failing to find that constitutional rights were violated by the annexation. That matter has previously been disposed of by this court.

It is clear that a sanitary and improvement district, like a municipal corporation, is a creation of the Legislature. The Legislature may prescribe how and in what manner this legal entity may be created, and, by the same token, as is true with municipal corporations, may determine how it can be discontinued. As we said in *City of Millard v. City of Omaha*, 185 Neb. 617, 622-23, 177 N.W.2d 576, 580 (1970):

> " 'Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and real property.

The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.' "

We know of no rule of law which would make this rule any different as applied to a sanitary and improvement district, which is another form of political subdivision. By inserting "sanitary and improvement districts" in place of "municipal corporations" in *City of Millard v. City of Omaha, supra,* we have a correct statement of the law which is dispositive of this issue. We are unable to find any basis to support the claim of S.I.D. No. 95 that the enactment of the ordinance violated the constitutional rights of either the district itself or any of its residents.

Having therefore considered and disposed of all of the errors assigned by S.I.D. No. 95, we affirm the judgment of the district court denying the injunction.

AFFIRMED.

CAPORALE, J., not participating.