Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/16/2020 09:08 AM CDT

Thomas M. Russell and Pamela J. Russell,
appellants, v. Franklin County,
Nebraska, appellee.

___ N.W.2d ___

Filed July 24, 2020.    No. S-18-827.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.
2. \_\_\_\_: \_\_\_\_. An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.
3. **Constitutional Law: Eminent Domain.** Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings.
4. **Eminent Domain: Property: Intent.** The threshold issue in an inverse condemnation case is to determine whether the property allegedly taken or damaged was taken or damaged as a result of the governmental entity's exercise of its power of eminent domain; that is, was the taking or damaging for public use.

Petition for further review from the Court of Appeals, Moore, Chief Judge, and Pirtle and Bishop, Judges, on appeal thereto from the District Court for Franklin County, Stephen R. Illingworth, Judge, on appeal thereto from the County Court for Franklin County, Timothy E. Hoeft, Judge. Judgment of Court of Appeals affirmed.

Matthew D. Hammes and Cristina Fackler, of Locher, Pavelka, Dostal, Braddy & Hammes, L.L.C., for appellants.

Brandy R. Johnson, of Governmental Law, L.L.C., and Henry Schenker, Franklin County Attorney, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Papik, J.

Under the Nebraska Constitution, an owner of private property is entitled to just compensation if a governmental entity damages that property for public use. In this case, a county felled trees on private property to improve visibility for a nearby road. Everyone agrees the landowner is entitled to compensation, but the parties disagree on how that compensation should be calculated. The district court determined that the landowners were entitled to receive an amount equal to the diminution in value of the land as a result of the county's action, and the Nebraska Court of Appeals affirmed. We granted further review and, for reasons we will explain herein, also affirm.

## BACKGROUND

*Removal of Trees.*

Thomas M. Russell and Pamela J. Russell own 164 acres of land in rural Franklin County (County). The property has been in the Russells' family for many years and includes cropland and pastureland. According to the Russells, they have used the property for birdwatching, camping, hunting for game and mushrooms, and other recreational purposes. There is no residence on the property.

In December 2015, the County's highway superintendent contacted Thomas and asked for permission to cut down trees on a certain area of the property. The County sought to cut down the trees to improve visibility for drivers on an adjacent county road. Thomas agreed to allow the removal of the trees in the identified area.

Employees of the County subsequently entered the Russells' land and cut down and uprooted trees. Rather than removing trees in the area in which the County was given permission, however, the employees removed other trees. By the time the Russells realized what was happening and asked the County to stop, 67 trees outside of the permitted area had been cut down or uprooted. At that point, Thomas told the highway superintendent that the County did not have his permission to remove any other trees.

*Inverse Condemnation Proceedings.*

The Russells filed an inverse condemnation proceeding against the County in Franklin County Court. They alleged that the County had unlawfully taken their property for a public use and that they were entitled to just compensation and other relief under Neb. Rev. Stat. § 76-705 et seq. (Reissue 2018). Appraisers appointed by the county court returned a report determining the damages suffered by the Russells, but the Russells were not satisfied and appealed to the district court.

In district court, both parties designated experts to give opinions on the extent of the damages sustained. Both parties also filed motions in limine seeking to exclude the opposing party's experts on the ground that the opposing experts' damages opinions were based on an incorrect measure of damages.

The County took the position that the correct measure of damages was the diminution in market value of the land as a result of the destruction of the trees. It retained a licensed and certified real estate appraiser as an expert. He offered opinions on the fair market value of the Russells' land before and after the destruction of the trees. Using this methodology, he determined the amount of the damages to the property was $200.

The Russells, on the other hand, contended that their damages were an amount equal to the fair and reasonable cost to restore the property to its prior condition. They relied upon an arborist, a salesperson from a nursery and garden center,

and a representative from an excavating company to quantify their damages. Together, the Russells claimed, these experts calculated the cost to return the property to its prior condition to be $150,716.

The County then filed a motion for summary judgment. In its motion, the County conceded that by cutting down trees outside the scope of the permission granted by the Russells, it had completed a "taking" of the Russells' property, but contended that there was no genuine issue of material fact as to the Russells' damages. Both parties introduced evidence at the summary judgment hearing from their experts as to damages.

The district court granted the County's summary judgment motion. It stated that the Russells were entitled to some compensation for the County's removal of their trees and that the only issue in dispute was the damages to which they were entitled. The district court concluded that the proper measure of damages was controlled by *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). It understood *Walkenhorst* to hold that a party whose property is taken by the government for a public use is entitled to receive the fair market value of the property taken and any decrease in the fair market value of remaining property caused by the taking. The district court reasoned that because the County's expert offered a damages opinion based on the correct measure of damages but the Russells did not, summary judgment was appropriate. Consistent with the damages opinion offered by the County's expert, it determined the Russells were entitled to $200 in compensation. The Russells appealed.

*Court of Appeals.*

The Court of Appeals affirmed the district court's decision over a dissent. See *Russell v. Franklin County*, 27 Neb. App. 684, 934 N.W.2d 517 (2019). The majority opinion agreed with the district court that the appropriate measure of damages was controlled by *Walkenhorst*. It read *Walkenhorst* to hold that in takings cases, "vegetation is not to be valued separately and

is only considered to the extent that its presence affected the fair market value of the land." *Russell*, 27 Neb. App. at 692, 934 N.W.2d at 523.

The Court of Appeals' majority disagreed with the dissenting opinion's view that because the damages were temporary, the Russells were entitled to recover the cost necessary to return the property to its prior condition under *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988). The majority recognized that in *Kula*, a landowner was allowed to recover such damages, but it concluded that *Kula* did not apply because it "was not an eminent domain case" and because it involved crops rather than trees. *Russell*, 27 Neb. App. at 696, 934 N.W.2d at 525.

The majority also rejected the Russells' argument that they were entitled to cost of repair damages under *Keitges v. VanDermeulen*, 240 Neb. 580, 483 N.W.2d 137 (1992). The majority concluded that *Keitges* had no bearing because it was a tort lawsuit between two landowners. And, even assuming that *Keitges* applied, the majority found that the Russells had not introduced the necessary evidence to be entitled to cost of repair damages.

We granted the Russells' petition for further review.

ASSIGNMENTS OF ERROR

The Russells could have been clearer in their petition for further review as to what errors they were assigning. After an introduction to the case's factual and procedural history, the petition includes a heading in bold type: "<u>ASSIGNMENT OF ERROR</u>." Immediately underneath that heading is a sentence in bold type and capitalized letters. The sentence is preceded by a Roman numeral I and states: "The Court of Appeals erred in failing to uphold the Nebraska State Constitution, Nebraska statutes and existing Supreme Court precedent applicable to property that has been damaged for a public use." Argument in support of that assertion follows. Later on in the petition, another sentence appears in bold type and all capitalized

letters preceded by a Roman numeral II. It generally asserts that our opinion in *Keitges, supra*, sets forth the appropriate measure of damages for temporary damages to trees and that the Court of Appeals erred by failing to follow it. Argument in support of that assertion follows.

The Russells appear to believe they effectively assigned error in both statements in bold type, in all capitalized letters, and preceded by Roman numerals. Their petition for further review does not, however, contain a separate section setting forth multiple assignments of error. Our rules of appellate practice require that any assignments of error be set forth in a separate section of the petition for further review. See Neb. Ct. R. App. P. §§ 2-102(F)(3) (rev. 2015) and 2-109(D)(1)(e) (rev. 2014).

Although the Russells' petition for further review does not contain a separate section setting forth multiple assignments of error, it does include immediately under the bold type heading "ASSIGNMENT OF ERROR" the statement following Roman numeral I. We have, perhaps generously, construed that as a separate section of the brief assigning a single assignment of error. Because no other issues have been properly assigned and argued, we will not discuss them. See *State v. Dreimanis*, 258 Neb. 239, 603 N.W.2d 17 (1999).

STANDARD OF REVIEW

[1] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pitts v. Genie Indus.*, 302 Neb. 88, 921 N.W.2d 597 (2019).

[2] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## ANALYSIS

*Background Regarding the Russells' Claim.*

[3,4] The Russells have sought compensation for the destruction of their trees via inverse condemnation. Inverse condemnation is a shorthand description for a landowner suit to recover just compensation for a governmental taking of the landowner's property without the benefit of condemnation proceedings. *Henderson v. City of Columbus*, 285 Neb. 482, 827 N.W.2d 486 (2013). The right to bring an inverse condemnation action derives from Neb. Const. art. I, § 21, which provides: "The property of no person shall be taken or damaged for public use without just compensation therefor." See *Henderson, supra*. The threshold issue in an inverse condemnation case is to determine whether the property allegedly taken or damaged was taken or damaged as a result of the governmental entity's exercise of its power of eminent domain; that is, was the taking or damaging for public use. See *id.*

A number of issues that might be contested in an inverse condemnation case are not disputed in this one. The Russells do not dispute, for example, that the County removed the trees to improve visibility on an adjacent county road and that this constitutes a public use. At the same time, the County does not deny that it removed trees it did not have the Russells' permission to remove and thereby damaged their property. Neither does the County dispute that the Russells were entitled to some compensation. The parties have not agreed and do not agree, however, on how that compensation should be calculated. We turn to that issue now.

*Permanent or Temporary Damages?*

The district court and the Court of Appeals concluded that the Russells were entitled to recover an amount equal to the diminution in value of their land as a result of the destruction of the trees. Both courts concluded this measure of damages followed from our decision in *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998).

In *Walkenhorst*, the State condemned strips of land in order to reconstruct a highway. The landowners claimed they were entitled to receive compensation for a shelterbelt of trees that was present on the condemned land in addition to compensation for the taking of the land itself. We disagreed, explaining that the landowners were entitled to recover the fair market value of the property actually acquired and the decrease in the market value of the remaining property. As a result, the landowners were not entitled to compensation "for the value of the shelterbelt as a shelterbelt; instead, the only relevant inquiry [was] how the presence of the shelterbelt on the condemned land affect[ed] the fair market value of the land taken." *Id.* at 992, 573 N.W.2d at 481.

The Russells argue that the district court and then the Court of Appeals erred by relying on *Walkenhorst*. They, like the dissenting opinion in the Court of Appeals, understand *Walkenhorst* to set forth the measure of damages for only those cases in which the government permanently takes private property for public use. In that circumstance, they admit, the landowner is entitled to recover only the fair market value of the property taken, as well as any resulting decrease in the fair market value of the remaining land. But here, they claim, the County did not permanently take any portion of their land but only temporarily damaged trees and, consequently, *Walkenhorst* does not apply.

The Russells, again in step with the dissenting opinion in the Court of Appeals, argue that another case, *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988), applies here and allows them to recover the costs necessary to replace the trees felled by the County. In *Kula*, a landowner sued a county under Neb. Const. art. I, § 21, alleging that the county had installed an inadequate culvert which caused floodwaters to accumulate on his land. After the district court entered an award in favor of the landowner, the county appealed, complaining that the wrong measure of damages was used. On appeal, this court held that the land was temporarily damaged and, under those

circumstances, the compensation due the landowners was the value of the use of the land for the period damaged, which in that case was "the value of the crops which could and would have been grown upon the land." *Id.* at 694-95, 424 N.W.2d at 119. This court went on to hold that the landowner could also recover other expenses necessary to return the land to its prior condition. The Russells assert that because their land was temporarily damaged, they too should be able to recover an amount equal to the cost necessary to return their land to its predamaged condition.

The Russells are correct that the governmental intrusion here differs from *Walkenhorst*: in that case, the State took title to the landowners' property, while here, it only briefly entered land and damaged trees. And there is at least some similarity between this case and *Kula*, at least insofar as both involve governmental interference with species of the plant kingdom growing on private property. Despite that similarity, however, it is far from clear to us that this case, like *Kula*, involved only temporary damages.

Several of our cases recognize that land might not be completely taken by the government for public use, but may nonetheless be permanently damaged. In those cases, we have held that the compensation due the landowner is the measure of damages applied by the district court and approved by the Court of Appeals in this case—the diminution in market value of the land before and after the damages. See, *Beach v. City of Fairbury*, 207 Neb. 836, 301 N.W.2d 584 (1981); *Quest v. East Omaha Drainage Dist.*, 155 Neb. 538, 52 N.W.2d 417 (1952). See, also, *Kula*, 228 Neb. at 694, 424 N.W.2d at 119 (explaining that when damages to land are permanent as in *Beach, supra*, the measure of damages is the "difference in the market value of the land before and after the damage").

Our cases have not significantly explored what differentiates permanent and temporary damages to land. Nebraska, however, is far from the only jurisdiction that employs a different measure of damages for permanent and temporary damages

to land. Several other courts that have considered the difference between those two categories have focused on whether the harm is likely to continue indefinitely, in which case it is permanent, or dissipate, in which case it is temporary. The Texas Supreme Court, for example, describes permanent injury to real property as that which is "ongoing, continually happening, or occurring repeatedly and predictably," and temporary damages as those that "do not last for long periods of time, are not ongoing, are not likely to occur again, occur only sporadically, or occur unpredictably." *Gilbert Wheeler v. Enbridge Pipelines*, 449 S.W.3d 474, 480 (Tex. 2014). The South Dakota Supreme Court uses a similar formulation, classifying damage to real estate as permanent when, among other things, it is "'presumed to continue indefinitely'" or is "irremediable." *Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259, 272 (S.D. 1985). See, also, *Rupert v. City of Rapid City*, 827 N.W.2d 55 (S.D. 2013); *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 262, 662 P.2d 1203, 1211 (1983) (explaining that temporary damages are those that occur intermittently or occasionally and the cause of which is removable, while permanent damages are "practically irremediable"); 1 Dan B. Dobbs, Dobbs Law of Remedies, § 5.11(2) at 823 (2d ed. 1993) (collecting cases holding that injury to land is permanent if will "continue indefinitely").

The rationale for treating damages that will continue indefinitely as permanent and allowing a recovery based on diminution in value appears to be that in those circumstances, "[e]ven though harm will continue, its future effects are captured all at one time by [the diminution in value of the real estate], which gives to the plaintiff the loss in value attributable to the future continuance of the invasion." Dobbs, *supra*, at § 5.11(1) at 820. "In contrast, if an invasion is temporary, general damages will be measured for the harm that has been done up until judgment, with more damages to come in later suits if they are necessary." *Id.* at 820-21.

If damages that will predictably recur are permanent, a strong case could be made that the damages to the Russells' property qualify and thus the district court did not err in its determination of the appropriate measure of damages. The County removed the trees because they impaired visibility on a nearby county road, a fact the Russells do not appear to dispute, given their admission that the trees were taken for public use. If the trees needed to be removed to improve road visibility, presumably they would be subject to removal again if replaced, lest the problems with road visibility arise again.

A decision of the South Dakota Supreme Court, *Rupert, supra*, supports an argument along these lines. In that case, the South Dakota Supreme Court reversed a trial court's determination that landowners suffered temporary damages when a city's use of deicer killed a number of trees on the landowners' land. Among the reasons identified by the South Dakota Supreme Court for reversal was the fact that the city intended to continue to use the deicer and thus would likely kill any new trees planted to replace those that were destroyed.

But while we believe a strong case could be made that the damages to the Russells' real property were permanent and the district court's decision was correct for that reason, we ultimately determine that it is not necessary to decide that issue. As we will explain below, even assuming the damages were temporary, the district court did not err in concluding the Russells were entitled to recover based on the diminution in value as determined by the County's expert.

*Temporary Damages Analysis.*

As noted above, the Russells' argument for cost of restoration damages rests on *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988). The landowner in *Kula* was allowed to recover, in addition to the value of the crops that would have grown on the land during the time of the temporary damages, certain costs necessary to return the land to its prior condition. And contrary to the Court of Appeals' statement that it was

not an eminent domain case, *Kula* did involve a landowner's right to just compensation for damages to private property for public use. See *Russell v. Franklin County*, 27 Neb. App. 684, 934 N.W.2d 517 (2019) (Bishop, Judge, dissenting).

But while we disagree with the Court of Appeals' majority that the Russells seek a different type of relief than the landowner in *Kula*, we agree with its ultimate conclusion that the Russells are not entitled to the same type of recovery. We reach this conclusion in reliance on *In re Application of SID No. 384*, 259 Neb. 351, 609 N.W.2d 679 (2000) (*SID*), a case decided after *Kula*. Neither the majority nor the dissenting opinion of the Court of Appeals discussed *SID*, but we find it precludes the Russells from obtaining cost of repair damages, even assuming their damages were temporary.

In *SID*, a sanitary and improvement district initiated condemnation proceedings to construct a sewer line and sought both permanent and temporary easements. The landowner sought to introduce expert testimony as to both the diminution in market value as a result of the easements and the replacement cost of trees and grasses destroyed in the construction of the sewer line. Of relevance to our analysis here, the landowner argued entitlement to recover the replacement cost of the trees and grasses destroyed on the land subject to the temporary easements. We observed that some of our prior cases involving temporary takings allowed the landowner to recover the value of the use of the land for the period taken. We also cited a California case, *Sacramento & San Joaquin Drainage Dist. v. Goehring*, 13 Cal. App. 3d 58, 66, 91 Cal. Rptr. 375, 380 (1970), that in addition to permitting recovery for the value of the use of the land, permitted cost of restoration damages if "'not in excess of the diminution in value of the property caused by physical changes made by the condemnor during the period of its possession.'"

This limitation on cost of restoration damages outlined in *Goehring* was crucial to our analysis in *SID*. There was no evidence in *SID* of loss of use damages, and the landowner's

expert concluded that the diminution in market value caused by the temporary easements was less than the cost to replace the destroyed trees and grasses. Because cost of restoration damages exceeded the diminution in value damages, we held that the proper measure of damages was the diminution in market value caused by the temporary taking.

Under *SID*, the Russells cannot recover cost of restoration damages. In this case, as in *SID*, no one has identified loss of use damages. And here, the discrepancy between the diminution in market value and the cost to repair is even greater than in *SID*. There is undisputed evidence that the market value of the Russells' land decreased by only $200 as a result of the destruction of the trees while the Russells claim their evidence shows it would cost over $150,000 to restore their land to its prior condition. Indeed, this case illustrates the rationale for the limitation on cost of restoration damages adopted in *SID*. Without it, a landowner could receive a significant windfall through cost of repair damages.

Finally, we note that we do not understand *SID* to conflict with *Kula v. Prososki*, 228 Neb. 692, 424 N.W.2d 117 (1988). There is no indication in *Kula* that the restoration costs the landowner was allowed to recover exceeded the diminution in market value.

For these reasons, we conclude that whether the damages the Russells suffered are properly classified as permanent or temporary, they are entitled to the same recovery: the diminution in value of their land as a result of the removal of their trees. The Court of Appeals properly affirmed the district court's determination of damages on that basis.

## CONCLUSION

We find that the Court of Appeals did not err in affirming the district court's entry of summary judgment. Accordingly, we affirm.

AFFIRMED.