Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
09/17/2021 08:11 AM CDT

Sanitary and Improvement District No. 67
of Sarpy County, Nebraska, appellant,
v. State of Nebraska Department
of Roads and Sarpy County,
Nebraska, appellees.

___ N.W.2d ___

Filed June 25, 2021.    No. S-20-659.

1. **Sanitary and Improvement Districts: Statutes.** Formed according to Nebraska statutes, sanitary and improvement districts are units of local government.
2. **Sanitary and Improvement Districts.** The primary function of sanitary and improvement districts is to install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential and commercial subdivisions.
3. **Standing: Pleadings: Evidence: Words and Phrases.** If a motion challenging standing is filed after the pleadings stage and the court holds an evidentiary hearing and reviews evidence outside of the pleadings, the motion is considered a factual challenge.
4. **Standing: Evidence.** The party opposing a factual challenge must offer evidence to show its entitlement to bring the suit.
5. **Standing: Pleadings: Evidence: Words and Phrases.** If standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a facial challenge.
6. **Standing: Pleadings.** In considering a facial challenge, the trial court will typically review only the pleadings to determine whether the plaintiff has therein alleged enough facts to establish standing.
7. **Parties: Statutes.** Neb. Rev. Stat. § 25-301 (Reissue 2016) requires that subject to certain statutory exceptions, every action shall be prosecuted in the name of the real party in interest.
8. **Actions: Parties.** The purpose of the requirement in Neb. Rev. Stat. § 25-301 (Reissue 2016) is to ensure that actions are prosecuted only

by persons who have some real interest in the cause of action or a legal or equitable right, title, or interest in the subject matter of controversy.

9. **Parties.** A real party in interest is one who, under the substantive law, has a claim to the relief sought. In this way, real party in interest is a procedural requirement that turns on the substantive law of the claim.

10. **Eminent Domain: Words and Phrases.** Inverse condemnation is a common shorthand for a landowner's suit to recover the value of property that has been taken or damaged by the State without the benefit of condemnation proceedings.

11. **Constitutional Law: Eminent Domain.** The substantive law in an inverse condemnation action derives from provisions in the U.S. and Nebraska Constitutions, which temper the State's inherent power to take private property.

12. **Judgments: Appeal and Error.** An appellate court is not prevented from affirming the judgment of a district court on different grounds.

13. **Counties: Property.** A county is not a person having private property.

14. **Sanitary and Improvement Districts: Legislature: Political Subdivisions.** A sanitary and improvement district is a legislative creature, a political subdivision of the State of Nebraska.

15. **Sanitary and Improvement Districts: Property: Statutes.** Once formed, a sanitary and improvement district has no inherent authority to hold an interest in property; it, unlike a person, can exercise only those powers expressly granted to it by statute or necessarily implied to carry out its expressed powers.

16. **Sanitary and Improvement Districts: Property.** A sanitary and improvement district is not capable of holding private property.

17. **Sanitary and Improvement Districts: Property: Statutes.** A sanitary and improvement district is granted the power by statute to take and hold real and personal property for a limited purpose.

18. **Political Subdivisions: Eminent Domain: Legislature.** A political subdivision of a state cannot hold private property for purposes of a takings claim against its own parent state. To the contrary, that property is ultimately the sovereign state's, held by the political subdivision pursuant to the grace of the Legislature.

Appeal from the District Court for Sarpy County: Nathan B. Cox, Judge. Affirmed.

Dean J. Jungers, of Hascall, Jungers & Garvey, for appellant.

Douglas J. Peterson, Attorney General, and Matthew F. Gaffey for appellee Nebraska Department of Roads.

John W. Reisz, Deputy Sarpy County Attorney, for appellee Sarpy County.

Heavican, C.J., Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Heavican, C.J.

## INTRODUCTION

This is an inverse condemnation action, brought by a sanitary and improvement district (SID) seeking compensation from the State. The district court dismissed the action on the pleadings, finding the SID lacked standing.

We agree. The SID is a political subdivision of the State, created by and subject to the State. As such, it is not a "person" having "private property" and is thus incapable of bringing an inverse condemnation action against the State. We affirm.

## BACKGROUND

[1,2] The appellant in this case is Sanitary and Improvement District No. 67 of Sarpy County, Nebraska (SID 67). Formed according to Nebraska statutes,[1] SID's are units of local government.[2] Their primary function is to install and maintain public improvements such as streets, sewers, utility lines, and other improvements associated with residential and commercial subdivisions.[3]

SID 67 serves Normandy Hills, a subdivision of more than 340 residences and several commercial properties near Bellevue, Nebraska. According to SID 67, it has maintained the "streets and roads" in the subdivision using funds raised "through the use of bonded indebtedness and general levy of taxes." Normandy Hills is located just east of Highway 75.

---

[1] See Neb. Rev. Stat. § 31-727 et seq. (Reissue 2016).

[2] See *SID No. 1 v. Adamy*, 289 Neb. 913, 858 N.W.2d 168 (2015).

[3] See, *id.*; *Hollstein v. First Nat. Bank of Aurora*, 231 Neb. 711, 437 N.W.2d 512 (1989).

For much of the subdivision's history, Normandy Hills' roads provided residents easy access to Highway 75 via either of two routes. From the subdivision's northwest corner, residents could travel about 500 feet west along Grenoble Drive to reach the highway. Alternatively, residents could enter the highway from the subdivision's southwest corner by driving some 500 feet west along Normandy Boulevard. Both routes connected by direct intersections to Highway 75.

But in 2003 and 2004, the State of Nebraska Department of Roads, now known as the Nebraska Department of Transportation (NDOT), agreed with Sarpy County to jointly reconstruct Highway 75. To do so, they blocked the two previous access routes between the subdivision and Highway 75 and instead rerouted such access via an alternative route.

Rather than leading directly west to Highway 75, the alternative route detoured north. Grenoble Drive was blocked near the highway's shoulder, and drivers were rerouted north along South Fort Crook Road, a frontage road that ran parallel with the highway. From South Fort Crook Road, drivers could turn west onto Fairview Road, which ultimately connected with Highway 75.

In a petition for compensation in the county court for Sarpy County, SID 67 claimed this rerouting had effected a "tak[ing] or damag[ing]" of its property. SID 67 alleged it was "the owner of the streets and roads located within the [SID] by reason of the dedication set forth in the plat of Normandy Hills, recorded October 18, 1972 at Book 5 of the Plat Records of Sarpy County Register of Deeds, at Page 82." The alleged dedication instrument, however, was not attached to SID 67's petition.

Although acknowledging the alternative route still afforded highway access from its streets and roads, SID 67 alleged it had been damaged by NDOT and Sarpy County's "terminat[ion]" of the two previously direct access routes. According to SID 67, the alternative route was an insufficient replacement, because it was indirect. SID 67 also claimed that the

alternative route failed to comply with Bellevue's fire code and that its sharp turns and steep grade altogether prevented certain vehicles' passage, particularly during severe weather or congested traffic.

As a result of the rerouting, SID 67 asserted that it would be forced to acquire right of way and construct a new fire apparatus access road to serve the residents of the District, as well as reconstruct the intersection and approach at Grenoble Drive and the new access road to better serve the residents of the District and make the flow of traffic at said intersection passable during inclement weather.

The county court appointed three appraisers to assess the value of SID 67's damages, if any. However, after considering the evidence at a hearing, the appraisers issued a final report concluding "[SID 67's] damages suffered by reason of the taking of the access to the property described in the Petition, including interest, total $0.00."

SID 67 next sought review in the district court for Sarpy County. There, SID 67 again alleged inverse condemnation. NDOT and Sarpy County moved to dismiss, alleging lack of standing and failure to state a claim upon which relief can be granted.[4]

The district court dismissed the action on the pleadings for lack of standing. According to the district court, SID 67 was not the real party in interest, because its pleadings had alleged neither that "[its] property ha[d] been taken" nor that it "[wa]s an 'abutting landowner'" to highway accesses that had been blocked. Contrary to SID 67's claim that it owned the streets and roads within Normandy Hills as the result of a dedication, the district court found:

The October 18, 1972 dedication . . . did not grant SID 67 an ownership interest in this property; quite the contrary, it divested SID 67 from any ownership interest it may have had and transferred ownership to the public[,]

---

[4] See Neb. Ct. R. Pldg. § 6-1112(b)(1) and (6).

thereby converting the private roads constructed by SID 67 into public roads.

Thus, despite observing that the motions had equally alleged failure to state a claim, the district court concluded it needed only to rely on lack of standing to determine that dismissal was appropriate.

After the action was dismissed, SID 67 appealed. We removed the case to our docket on our own motion.

## ASSIGNMENTS OF ERROR

SID 67 assigns five errors, which we consolidate and restate as two: The district court erred in (1) declining to admit evidence offered in opposition to dismissal and (2) dismissing the action on the pleadings for want of the real party in interest.

## STANDARD OF REVIEW

The question of whether a plaintiff is the real party in interest and therefore has standing is a question of the court's subject matter jurisdiction.[5] Accordingly, either a litigant or the court can raise standing at any time, including on appeal.[6] The plaintiff bears the burden to establish standing to bring the suit.[7]

A district court's grant of a motion to dismiss on the pleadings is reviewed de novo by an appellate court, accepting the factual allegations in the complaint as true and drawing all reasonable inferences of law and fact in favor of the nonmoving party.[8] However, an appellate court reviewing a dismissal on the pleadings is not obliged to accept as true legal

---

[5] See *Equestrian Ridge v. Equestrian Ridge Estates II*, 308 Neb. 128, 953 N.W.2d 16 (2021).

[6] See *Jacobs Engr. Group v. ConAgra Foods*, 301 Neb. 38, 917 N.W.2d 435 (2018).

[7] See *id.*

[8] See, *Ryan v. Streck, Inc., ante* p. 98, 958 N.W.2d 703 (2021); *Schaeffer v. Frakes*, 306 Neb. 904, 947 N.W.2d 714 (2020).

conclusions couched as factual allegations or threadbare recitals of the elements of a cause of action supported by mere conclusory statements.[9]

## ANALYSIS

We agree with the district court that the real party in interest doctrine is dispositive in this case. However, before we discuss that issue, we must first characterize the stage of litigation during which standing was challenged, for that affects whether evidence should have been allowable.[10]

### Facial, Not Factual, Challenge

[3-6] If a motion challenging standing is filed after the pleadings stage and the court holds an evidentiary hearing and reviews evidence outside of the pleadings, the motion is considered a "factual challenge."[11] The party opposing a factual challenge must offer evidence to show its entitlement to bring the suit.[12] But if standing is challenged at the pleadings stage, before an evidentiary hearing and before any evidence outside of the pleadings is admitted, it is deemed a "facial challenge."[13] In considering a facial challenge, the trial court will typically review only the pleadings to determine whether the plaintiff has therein alleged enough facts to establish standing.[14]

Here, NDOT's and Sarpy County's motions to dismiss were filed at the pleadings stage of litigation. No evidentiary hearing was held; nor was evidence admitted. The district court then dismissed the action for lack of standing, apparently

---

[9] See *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020).

[10] See *Western Ethanol Co. v. Midwest Renewable Energy*, 305 Neb. 1, 938 N.W.2d 329 (2020).

[11] *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020).

[12] *Id.*

[13] *Western Ethanol Co., supra* note 10.

[14] See *id.*

without consulting evidence outside of the pleadings. It acknowledged considering only the "[p]etition and [a]ppeal" for purposes of its order. The motions were thus treated as presenting a facial challenge, and as the party opposing the challenge, SID 67 had no entitlement to offer evidence in its defense.

SID 67 argues that ownership of the roads in Normandy Hills was at issue and that this involved "a question of fact which required the court to consider the case as a motion for summary judgment rather than a motion on jurisdiction."[15] SID 67 thus insists that the plat allegedly showing its ownership of the roads should have been considered.

But that argument misapprehends the nature of a facial challenge. Jurisdiction was at issue, having been facially challenged by NDOT's and Sarpy County's motions to dismiss. To prevail against that facial challenge, it was SID 67's burden to allege adequate facts in its pleadings showing that it had standing to bring the suit. And in assessing whether SID 67 had met that burden, the district court was not required to consider evidence outside of the pleadings. SID 67's first assignment of error is accordingly without merit.

## Want of Real Party in Interest

Having characterized the stage of litigation below and determined that SID 67's first assignment of error is without merit, we turn next to SID 67's second assignment of error. SID 67 assigns that the district court erred in finding that it lacked standing because it was not the real party in interest to this action.

[7-9] Neb. Rev. Stat. § 25-301 (Reissue 2016) requires that subject to certain statutory exceptions,[16] "[e]very action shall be prosecuted in the name of the real party in interest . . . ."

---

[15] Brief for appellant at 19.

[16] See Neb. Rev. Stat. § 25-304 (Reissue 2016) (listing exceptions).

The purpose of that requirement is to ensure that actions are prosecuted only by persons who have some real interest in the cause of action or a legal or equitable right, title, or interest in the subject matter of controversy.[17] A real party in interest is one who, under the substantive law, has a claim to the relief sought.[18] In this way, real party in interest is a procedural requirement that turns on the substantive law of the claim.[19]

[10,11] In its claim, SID 67 sought relief via inverse condemnation. Inverse condemnation is a common shorthand for a landowner's suit to recover the value of property that has been taken or damaged by the State without the benefit of condemnation proceedings.[20] The substantive law in an inverse condemnation action derives from provisions in the U.S. and Nebraska Constitutions,[21] which temper the State's inherent power to take private property.[22]

Under Neb. Const. art. I, § 21, "[t]he property of no person shall be taken or damaged for public use without just compensation therefor." And the 5th Amendment to the U.S. Constitution, as applied to the states by the 14th Amendment, similarly requires the State to pay "just compensation" when it takes "private property . . . for public use."[23]

[12] Applying the real party in interest doctrine to this case, the district court dismissed this action upon finding that

---

[17] See *Valley Boys, supra* note 11.

[18] See *id.*

[19] See John P. Lenich, Nebraska Civil Procedure § 6:2 (2021).

[20] See, *Knick v. Tp. of Scott, Pennsylvania*, ___ U.S. ___, 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019); *Russell v. Franklin County*, 306 Neb. 546, 946 N.W.2d 648 (2020).

[21] See, *Russell, supra* note 20; *Cappel v. State*, 298 Neb. 445, 905 N.W.2d 38 (2017).

[22] See, *Estermann v. Bose*, 296 Neb. 228, 892 N.W.2d 857 (2017); *Thompson v. Heineman*, 289 Neb. 798, 857 N.W.2d 731 (2015).

[23] See *Knick, supra* note 20.

contrary to SID 67's allegations in the pleadings, a dedication instrument could not have conveyed to it ownership of the roads at issue. While we agree that dismissal was appropriate, we reach that conclusion on our de novo review by slightly different reasoning than the district court, because an appellate court is not prevented from affirming the judgment of a district court on different grounds.[24] We rest our decision on the argument stated in NDOT's brief that "SID 67 is not a 'person' for purposes of making an inverse condemnation claim . . . ."[25]

Neb. Const. art. I, § 21, protects only the property of a "person" from being taken or damaged without just compensation. Similarly, the U.S. Constitution limits its requirement of just compensation to a state's taking of "private" property for public use.[26] Citing these constitutional provisions and alleging that SID 67 is not a "person" capable of owning the property at issue in a "private" capacity, NDOT insists that SID 67 is not the real party in interest to this inverse condemnation action. We agree.

We have long held that not all entities qualify as legal persons for purposes of constitutional protection. For example, it is well settled in Nebraska that a county is not a "person" entitled to the guarantee of due process.[27] Explaining why, we stated that "[a] county, as a creature and political

---

[24] See *Edwards v. Douglas County*, 308 Neb. 259, 953 N.W.2d 744 (2021).

[25] Brief for appellee NDOT at 17.

[26] See U.S. Const. amends. V and XIV.

[27] See, e.g., *In re Claim of Roberts for Attorney Fees*, 307 Neb. 346, 949 N.W.2d 299 (2020); *White v. White*, 293 Neb. 439, 884 N.W.2d 1 (2016); *Schropp Indus. v. Washington Cty. Atty.'s Ofc.*, 281 Neb. 152, 794 N.W.2d 685 (2011); *City of Lincoln v. Central Platte NRD*, 263 Neb. 141, 638 N.W.2d 839 (2002); *Rock Cty. v. Spire*, 235 Neb. 434, 455 N.W.2d 763 (1990); *Saunders Cty. v. Metropolitan Utilities Dist.-A*, 11 Neb. App. 138, 645 N.W.2d 805 (2002); *Dodge Cty. Bd. v. Nebraska Tax Equal. & Rev. Comm.*, 10 Neb. App. 927, 639 N.W.2d 683 (2002).

subdivision of the State, is neither a natural nor an artificial person."[28] We held the same was true of a school district.[29] And other jurisdictions have applied the same reasoning to hold that states,[30] cities,[31] and various other political subdivisions[32] are generally not persons under their respective constitutions' similarly worded due process clauses.

Our case law has also extended that reasoning from the due process context to the context at issue here. In *Rock Cty. v. Spire*,[33] a county alleged that the Legislature, by enacting statutes requiring the county's furniture and office equipment to be transferred to a state agency, had effected a taking of county property for which compensation was required.

We rejected the county's argument, stating:

> Because, as we have established [for purposes of due process], the county is not a person, it is not within the protections afforded by Neb. Const. art. I, § 21. Neither may the county claim compensation under the federal Constitution. Under Nebraska law a county lacks authority to hold property in a proprietary capacity and may hold only property which is dedicated to a public use. . . .

---

[28] *White, supra* note 27, 293 Neb. at 444, 884 N.W.2d at 6. Accord, *Schropp Indus., supra* note 27; *City of Lincoln, supra* note 27.

[29] See *Loup City Pub. Sch. v. Nebraska Dept. of Rev.*, 252 Neb. 387, 562 N.W.2d 551 (1997).

[30] See, *South Carolina v. Katzenbach*, 383 U.S. 301, 86 S. Ct. 803, 15 L. Ed. 2d 769 (1966); *South Dakota v. U.S. Dept. of Interior*, 665 F.3d 986 (8th Cir. 2012).

[31] See, *State v. City of Birmingham*, 299 So. 3d 220 (Ala. 2019); *Board Educ. St. Louis v. Missouri Bd. Educ.*, 271 S.W.3d 1 (Mo. 2008); *City of Cave Springs v. City of Rogers*, 343 Ark. 652, 37 S.W.3d 607 (2001); *Morial v. Smith & Wesson Corp.*, 785 So. 2d 1 (La. 2001). Cf. *City of Newark v. State of New Jersey*, 262 U.S. 192, 43 S. Ct. 539, 67 L. Ed. 943 (1923).

[32] See, *Lakehaven Water and Sewer v. City of Fed.*, 195 Wash. 2d 742, 466 P.3d 213 (2020); *State, Dept. of Game v. Troy Township*, 900 N.W.2d 840 (S.D. 2017).

[33] *Rock Cty., supra* note 27.

The State therefore does not take private property within the meaning of U.S. Const. amend. V when it takes property from the county and is not required to compensate the county.[34]

In view of this case law interpreting the constitutional provisions at issue, we next consider whether the type of entity at issue here is entitled to takings protections. We acknowledge that we have previously recognized that some public entities can qualify as condemnees under the eminent domain statutes, at least in the limited context of their holding tax liens on condemned private property.[35] If SID 67 is to be considered a real party in interest in this action, it must show that it, unlike a county,[36] is a "person" having "private property."

But we find that argument foreclosed by our decision in *S.I.D. No. 95 v. City of Omaha*.[37] There, the SID, on behalf of itself and its member landowners, challenged the city's annexation of land within the SID's district. The SID had raised various constitutional arguments, including a claim for inverse condemnation.

We rejected the SID's arguments, including its inverse condemnation claim. Quoting from a line of cases that dealt with the rights of municipal corporations in relation to the State, we reasoned:

> "'Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be entrusted to them. For the purpose of executing these powers properly and efficiently they usually are given the power to acquire, hold, and manage personal and

---

[34] *Id.* at 449, 455 N.W.2d at 772.

[35] See, *City of Waverly v. Hedrick*, 283 Neb. 464, 810 N.W.2d 706 (2012); *State v. Missouri P. R. Co.*, 75 Neb. 4, 105 N.W. 983 (1905).

[36] See *Rock Cty., supra* note 27.

[37] *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985).

real property. The number, nature and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the State. Neither their charters, nor any law conferring governmental powers, or vesting in them property to be used for governmental purposes, or authorizing them to hold or manage such property, or exempting them from taxation upon it, constitutes a contract with the State within the meaning of the Federal Constitution. The State, therefore, at its pleasure may modify or withdraw all such powers, *may take without compensation such property*, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the State is supreme, and its legislative body, conforming its action to the state constitution, may do as it will, unrestrained by any provision of the Constitution of the United States.'"[38]

Then, despite acknowledging that the above language referred only expressly to "municipal corporations," we held:

We know of no rule of law which would make this rule any different as applied to [an SID], which is another form of political subdivision. By inserting "sanitary and improvement districts" in place of "municipal corporations" [above], we have a correct statement of the law which is dispositive of this issue. We are unable to find any basis to support the claim of S.I.D. No. 95

---

[38] *Id.* at 279-80, 376 N.W.2d at 772 (emphasis supplied) (quoting *City of Millard v. City of Omaha*, 185 Neb. 617, 177 N.W.2d 576 (1970)). Accord, *Hunter v. City of Pittsburgh*, 207 U.S. 161, 28 S. Ct. 40, 52 L. Ed. 151 (1907); *Campbell v. City of Lincoln*, 182 Neb. 459, 155 N.W.2d 444 (1968).

that the enactment of the [city's annexation] ordinance violated the constitutional rights of either the district itself or any of its residents.[39]

[13-15] We believe that the above statement of law concerning municipal corporations is also dispositive in this case. Under *Rock Cty.*,[40] a county is not a "person" having "private property." And like a county, the SID "is a legislative creature, a political subdivision of the State of Nebraska."[41] Statutes prescribe the SID's formation as "a public corporation of this state."[42] Once formed, the SID has no inherent authority to hold an interest in property; it, unlike a "person," can exercise only those powers expressly granted to it by statute or necessarily implied to carry out its expressed powers.[43]

[16,17] Nor does the SID hold "private property."[44] The SID is granted the power by statute "to take and hold real and personal property necessary for its use."[45] But any exercise of that power is plainly limited to being a product of the SID's public function.[46] And the Legislature could just as easily retract that power or discontinue the SID's existence altogether.[47] As we stated above, so too could the Legislature """"at its pleasure . . . take without compensation such property"""" as it has allowed the SID to hold.[48]

---

[39] *S.I.D. No. 95, supra* note 37, 221 Neb. at 280, 376 N.W.2d at 772-73.

[40] See *Rock Cty., supra* note 27.

[41] *SID No. 1, supra* note 2, 289 Neb. at 922, 858 N.W.2d at 176. Accord *Rexroad, Inc. v. S.I.D. No. 66*, 222 Neb. 618, 386 N.W.2d 433 (1986).

[42] Neb. Rev. Stat. § 31-730 (Reissue 2016).

[43] Cf. *Wetovick v. County of Nance*, 279 Neb. 773, 782 N.W.2d 298 (2010).

[44] See U.S. Const. amends. V and XIV.

[45] Neb. Rev. Stat. § 31-732 (Reissue 2016).

[46] *S.I.D. No. 95, supra* note 37.

[47] *Id.*

[48] *Id.* at 280, 376 N.W.2d at 772. Accord, *Hunter, supra* note 38; *City of Millard, supra* note 38; *Campbell, supra* note 38.

We note that this relationship between SID's and the State distinguishes this case from that line of cases in which courts have recognized that the federal government must provide compensation for its taking of a state's property. As the U.S. Supreme Court recognized in *United States v. 50 Acres of Land*,[49] due to the status of state and federal governments as separate sovereigns, a state can indeed hold "private property" independently of the federal government. When the federal government takes that property, it must pay compensation.

[18] Yet, the U.S. Supreme Court has also recognized that the takings clause under the U.S. Constitution does not apply when a sovereign state transfers public property from one governmental use to another, both uses a function of that state's sovereignty.[50] As several other jurisdictions have already held, by this reasoning, a political subdivision of a state cannot hold "private property" for purposes of a takings claim against its own parent state.[51] To the contrary, that property is ultimately the sovereign state's, held by the political subdivision pursuant to "the grace of the [Legislature]."[52]

We thus conclude that because SID 67 is not a "person" having "private property," it is not the real party in interest and therefore lacks standing to bring this inverse condemnation action. For this reason alone, the district court was correct

---

[49] *United States v. 50 Acres of Land*, 469 U.S. 24, 105 S. Ct. 451, 83 L. Ed. 2d 376 (1984).

[50] See *United States v. Carmack*, 329 U.S. 230, 67 S. Ct. 252, 91 L. Ed. 209 (1946). See, also, *Risty v. Chicago, R. I. & Pac. Ry. Co.*, 270 U.S. 378, 390, 46 S. Ct. 236, 70 L. Ed. 641 (1926) ("[t]he power of the State and its agencies over municipal corporations within its territory is not restrained by the provisions of the Fourteenth Amendment").

[51] See, e.g., *Georgetown County v. Davis & Floyd, Inc.*, 426 S.C. 52, 824 S.E.2d 471 (S.C. App. 2019); *Bd. of Water Works v. Board of Supervisors*, 890 N.W.2d 50 (Iowa 2017); *St. Louis Sewer Dist v. Bellefontaine Nbrs.*, 476 S.W.3d 913 (Mo. 2016) (en banc).

[52] *Bd. of Water Works, supra* note 51, 890 N.W.2d at 69. Accord *S.I.D. No. 95, supra* note 37.

in dismissing SID 67's action on the pleadings. We need not further consider the merits of SID 67's claim.[53]

## CONCLUSION

On our de novo review, we agree with the district court's decision to dismiss this case on the pleadings. Since SID 67 is not a "person" having "private property," it cannot bring an inverse condemnation action against the State. Dismissal was thus appropriate.

We affirm the judgment of the district court for Sarpy County.

Affirmed.

Miller-Lerman, J., participating on briefs.

---

[53] See *Holmstedt v. York Cty. Jail Supervisor*, 275 Neb. 161, 168, 745 N.W.2d 317, 322 (2008) ("'when a motion to dismiss raises both rule 12(b)(1) [subject matter jurisdiction] and [rule 12(b)](6) grounds, the court should consider the rule 12(b)(1) grounds first and should then consider the rule 12(b)(6) grounds only if it determines that it has subject matter jurisdiction'") (quoting *Anderson v. Wells Fargo Fin. Accept.*, 269 Neb. 595, 694 N.W.2d 625 (2005)).